FIRST NATIONAL BANK OF WASHINGTON v. WHITMAN.

1 The payee of a check before it is accepted by the drawee cannot maintain an action upon it against the latter, as there is no privity of contract between them. *So held*, where a check of the Treasurer of the United States upon a national bank duly designated as a depositary of the public money, having been paid upon an unauthorized indorsement of the name of the payee, suit to recover the amount of the check was brought by its true owner against the bank.

2. The rights of the parties are not changed by the fact that, on a settlement of accounts between the Treasurer and the bank, the check, on the supposition that it had been properly paid, was credited to the bank. Such an error does not affect the real state of the accounts; when it is discovered, they are open to correction.

8. Payment to a stranger upon an unauthorized indorsement does not operate as an acceptance of the check, so as to authorize an action by the real owner to recover its amount as upon an accepted check.

ERROR to the Supreme Court of the District of Columbia.

The facts are stated in the opinion of the court.

Argued by *Mr. A. G. Riddle* and *Mr. F. Miller* for the plaintiff in error, and by *Mr. S. Shellabarger* and *Mr. J. Daniels* for the defendant in error.

MR. JUSTICE HUNT delivered the opinion of the Court.

This action is brought against the First National Bank of Washington to recover the amount of a check drawn upon it by Mr. Spinner, Treasurer of the United States, for $3,414. dated March 9, 1867. The check is in this form, viz.: —

"*Draft No.* 9,243 *on War Warrant No.* 915.

"$3,414.]        TREASURY OF THE UNITED STATES,
                    "WASHINGTON, March 9, 1867.

"Pay to the order of Mrs. E. S. Kimbro, three thousand three hundred and fourteen dollars. No. 9,243. Registered March 9, 1867.

"Issued on requisition No. ——.  $3,414.

                        "S. B. COLBY,
                            "*Register of the Treasury.*
                        "F. E. SPINNER,
                            "*Treasurer of the United States.*

"To the First National Bank of Washington, D. C."

It was indorsed in the name of Mrs. Kimbro without authority, and the amount of it was paid by the bank to an unauthorized holder. It appears from the testimony of Mr. Tayler, first comptroller of the treasury, that the funds of the government deposited by the Treasurer in a national bank are treated by the government, for the purposes of keeping accounts, as in the Treasurer's own charge and custody; that they are charged to him, and that payments made are credited to him, and that he is chargeable precisely as if the funds had been in his own office, and that he had power to make the check in question.

· We may, therefore, simplify the case by eliminating from its consideration all reference to the United States, and consider the transaction as between Mr. Spinner, as an individual, and the bank, as his depositary, and Mrs. Kimbro, as the payee of his check.

The question is this: Can the payee of a check, whose indorsement has been forged or made without authority, and when payment has been made by the bank on which it was drawn, upon such unauthorized indorsement, maintain a suit against the bank to recover the amount of the check? We think it is clear, both upon principle and authority, that the payee of a check unaccepted cannot maintain an action upon it against the bank on which it is drawn. The careful and well-reasoned opinion of Mr. Justice Davis in delivering the judgment of this court in *Bank of the Republic* v. *Millard*, 10 Wall. 152, leaves little to add upon this subject by way of illustration or authority. In that case a paymaster of the army made his check on the Bank of the Republic to the order of Captain Millard for $859, due to him for arrears of pay as an officer of the army. The bank paid the amount of the check upon a forged indorsement of Millard's name. Recovering the check and exposing the forgery, Millard demanded payment to himself, and, upon refusal, brought his action against the bank. This court held that the action could not be maintained, upon the principle that there was no privity between the bank and Millard. The bank's contract was with the paymaster only, and to him only was its duty. It received no money from Millard. It never promised Millard to pay him any money. It

had no money belonging to him. It received money from the paymaster, upon an agreement that it would return it to him when called for by him in person, or that it would pay it upon his checks. But it made no such agreement, or any agreement, with Millard. For a failure of duty in this respect it was responsible to the paymaster, with whom it made the contract, and to no one else. If the check was not paid, the arrears of pay to Millard were not paid, and his claim upon the government or the paymaster was not impaired by the giving of the check, which, being presented in due time, was not paid. He was still entitled to demand his arrears.

That case is a perfect and complete authority upon the question stated. See also *Artuer* v. *Bank*, 46 N. Y. 82.

Nor is this principle confined to checks or bills. Thus, in *Ashley* v. *Dixon*, 48 N. Y. 430, it was held that if A. be under a contract to sell property to B., and C. persuade A. to sell the property to him, no action lies by B. against C. There is no privity of contract between C. and B., but the remedy of the latter is against A. only.

It is not to be doubted, however, that it is within the power of the bank to render itself liable to the holder and payee of the check. This it may do by a formal acceptance written upon the check, in which case it stands to the holder in the position of a drawer and acceptor of a bill of exchange. *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Espy* v. *Bank of Cincinnati*, 18 id. 604.

It may accomplish the same result by writing upon it the word "good," or any similar words which indicate a statement by it that the drawer has funds in a bank applicable to the payment of the check, and that it will so apply them. *Cook* v. *State Bank of Boston*, 52 N. Y. 96. And such certificate, it is said, discharges the drawer. As to him it amounts to a payment. *Bank* v. *Leach*, 52 N. Y. 350; *Meads* v. *Merchants' Bank*, 25 id. 143; 9 Met. 311; 2 Duer, 121. Whether this certificate be obtained by the drawer before the check is delivered, and is thus made an inducement to the payee to receive the same, or whether it is made upon the application of the payee for his security, is of no importance. It is a contract recognized by the law, valid in its character, which essentially

changes the position of the parties. The privity of contract with the drawee, which before pertained to the drawer alone, is now imparted to the payee, and the duty which before existed only to the drawer now exists to the payee.

It is said that this fact of a contract between the payee and drawee exists in the present case. The testimony of Mr. Arnold is referred to, to the effect that in April, 1867, the bank made its weekly statement to Mr. Spinner of deposits received and payments made, returning the draft of Mrs. Kimbro as paid on the 22d of that month, and that in the statement the amount of the draft was entered to the credit of the bank.

There is no suggestion in the evidence that either the bank or Mr. Spinner knew that the indorsement of the payee was unauthorized. The bank, we assume, would not knowingly subject itself to the dangers and liabilities resulting from making payment to one not authorized to receive it. We assume, also, as we are bound in justice to it to do, that it would not ask Mr. Spinner to give credit for a payment that it knew to have been illegally made, and that it would not attempt to deceive him into the belief that a pretended indorsement was a real one. It comes to this, then, that, upon a settlement of accounts between them, a credit was by mistake allowed to the bank to which it was not entitled. The law is, that neither party is to be benefited or to be injured by the mistake. The bank must refund the amount by handing over the sum, or by crediting the same to Mr. Spinner in his next account. Mistakes in bank accounts are not uncommon. They occur both by unauthorized or pretended payments, as well as by the omission to give credit for sums deposited. When discovered, the mistake must be rectified, and an ordinary writing up of a bank-book, with a return of vouchers or a statement of accounts, precludes no one from ascertaining the truth and claiming its benefit. Story, Eq. Pl., sects. 799–801; Story, Eq. Jur., sects. 523, 527; *Buchlin* v. *Chaplin,* 1 Lans. 443; *Bruen* v. *Hone,* 2 Barb. 586; *Bullock* v. *Boyd,* 2 Edw. 293. We cannot perceive that such a mistaken recognition of the validity of the payment of this check can create an additional or different contract between the bank and the owner of the draft.

It is further contended that such an acceptance of the check as creates a privity between the payee and the bank is established by the payment of the amount of this check in the manner described.   This argument is based upon the erroneous assumption that the bank has paid this check.   If this were true, it would have discharged all of its duty, and there would be an end of the claim against it.   The bank supposed that it had paid the check; but this was an error.   The money it paid was upon a pretended and not a real indorsement of the name of the payee.   The real indorsement of the payee was as necessary to a valid payment as the real signature of the drawer : and in law the check remains unpaid.   Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before.

We cannot recognize the argument that a payment of the amount of a check or sight draft under such circumstances amounts to an acceptance, creating a privity of contract with the real owner.   It is difficult to construe a payment as an acceptance under any circumstances.   The two things are essentially different.   One is a promise to perform an act, the other an actual performance.   A banker or an individual may be ready to make actual payment of a check or draft when presented, while unwilling to make a promise to pay at a future time.   Many, on the other hand, are more ready to promise to pay than to meet the promise when required.   The difference between the transactions is essential and inherent.

Without discussing the other questions argued, we are of the opinion, for the reasons given, that the plaintiff below was not entitled to recover.

*Judgment reversed, and cause remanded for a new trial, or for such further proceedings as the parties may be advised to take.*