[Civil No. 280.   Filed April 18, 1890.]

[24 Pac. 184.]

## THOMAS D. SATTERWHITE, Plaintiff and Appellant, v. WILLIAM MELCZER et al., Defendants and Appellees.

1. BANKS AND BANKING—CHECKS—REFUSAL TO PAY—NO LIABILITY TO HOLDER.—A bank is not liable to the holder of a check drawn by a general depositor for its refusal to pay the check, though it has sufficient funds of the drawer to pay the amount called for.

2. EXECUTIONS—TO WHOM DIRECTED—LAWS 1889, SEC. 2, P. 37, CONSTRUED—REV. STATS. ARIZ. 1887, PAR. 1895, REPEALED—REV. STATS. ARIZ. 1887, PAR. 512, CITED.—Statute, *supra,* provides that an execution must be directed to the sheriff of the county where it is served, and repeals the provision of the Revised Statutes of Arizona of 1887, *supra,* which permitted its direction to constables. The "other officer" referred to in the act of 1889 refers to the provision of paragraph 512 of the Revised Statutes of Arizona of 1887, which designates other officers who shall perform his duties in case of his disqualification.

WRIGHT, C. J., dissenting.

3. SAME—LEVY—UPON MONEY—ACTS 1889, P. 39, SEC. 9, CLAUSE 2, CITED.—Under statute, *supra,* to make a valid levy upon money the officer must reduce it to possession.

WRIGHT, C. J., dissenting.

4. SAME—SAME—RETURN—BINDING UPON JUDGMENT CREDITOR.—Where an officer has made return of an execution stating that he has levied upon money in the hands of a bank belonging to the judgment debtor, Wise, the fact that such bank was a simple debtor to Wise

and that he had no specific money in its hands as bailee cannot change the effect of the levy from one upon money to one upon a debt.

WRIGHT, C. J., dissenting.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. William H. Barnes, Judge.  Affirmed.

The facts are stated in the opinion.

Maxwell & Satterwhite, for Appellant.

No officer, except the one authorized by statute, can make a valid levy.  The execution in this case could only be served and levied by the sheriff.  The said levy was attempted to be made by a constable and was void.

It is true that the writ itself was directed to the "sheriff or any constable," but there was no statutory authority for the issuance of the writ.  The Revised Statutes of 1887 (par. 1895) authorized the writ to be directed to a constable.  But the execution was issued under the act of the last legislative assembly.  (See Acts of 1889, p. 37.)  Section 2 of that act provides that the clerk shall direct the execution to the sheriff. That section, supplemented by sections 7, 22, and 24 of the same act, shows conclusively not only that the law was changed, but that it was intentionally changed, so that the service of an execution issued by the clerk was restricted to the sheriff.  Hence any act of the constable in the attempted levy of said execution was necessarily void.  The execution might as well have been directed to any other officer, or to a private individual.

If anything was levied on under this execution, as claimed by respondent, it would come within the general designation of personal property.  No levy of an execution can be made upon personal property without taking actual possession of it.  This is settled by our statute, and by the decisions of all the states.  Session Laws of 1889, p. 30, sec. 9; Rorer on Judicial Sales, sec. 1002, p. 329; 6 Wait's Actions and Defenses, 752; *Carey* v. *Bright,* 58 Pa. St. 84; *Westervelt* v. *Pickney,* 14 Wend. 123, 28 Am. Dec. 516; *Levi* v. *Shockley,* 29 Ga. 710; *Duncan's Appeal,* 37 Pa. St. 500; *Brown* v. *Lane,*

19 Tex. 203; *Leach* v. *Pine,* 41 Ill. 66, 89 Am. Dec. 375; *Beekman* v. *Lansing,* 3 Wend. 446, 20 Am. Dec. 707; *Logsdon* v. *Spivey,* 54 Ill. 104; *Osborn* v. *Cloud,* 23 Iowa, 108, 109, 92 Am. Dec. 413.

A general deposit of money in a bank is not subject to levy, because the depositor has no title to any specific pieces of money, but only a right to have an equal amount of money returned to him. 6 Wait's Actions and Defenses, 752; *Scott* v. *Smith,* 2 Kan. 438; *Carroll* v. *Cone,* 40 Barb. 220; Freeman on Executions, sec. 111, p. 197; *McMillan* v. *Richards,* 9 Cal. 366, 369, 418, 70 Am. Dec. 655, and note; *Doyle* v. *Sleeper,* 1 Dana, 531.

The right to seize and sell property on execution is coextensive only with the power to take and deliver possession. *Campbell* v. *Leonard,* 11 Iowa, 495; *Osborn* v. *Cloud,* 23 Iowa, 109, 92 Am. Dec. 413.

The officer must have the goods or property in his view and power. He should enter the store and take actual possession. He must assert his title to the property under execution, and his acts must be such that except for the protection of the execution he would be a trespasser. 6 Wait's Actions and Defenses, 756, 757; *Beekman* v. *Lansing,* 3 Wend. 446, 20 Am. Dec. 707; *Green* v. *Burke,* 23 Wend. 490; *Westervelt* v. *Pickney,* 14 Wend. 123, 28 Am. Dec. 516; *Connah* v. *Hale,* 23 Wend. 462.

In all cases there must be something more than a mere pen-and-ink levy. It is not sufficient that the officer make an inventory of the property and indorse the levy upon the writ. He must go where the property is. He must be where he can exercise control over it. He must do some act by reason of which he could be successfully prosecuted as a trespasser if it were not for the protection afforded by the writ. Freeman on Executions, sec. 260, p. 413; *Goode* v. *Longmire,* 35 Ala. 668, 76 Am. Dec. 309; *Westervelt* v. *Pickney,* 14 Wend. 123, 28 Am. Dec. 516; *Minor* v. *Herriford,* 25 Ill. 344; *Beekman* v. *Lansing,* 3 Wend. 450, 20 Am. Dec. 707; *Davidson* v. *Waldron,* 31 Ill. 120, 83 Am. Dec. 206; *Bryan* v. *Bridges,* 6 Tex. 141; *Logsdon* v. *Spivey,* 54 Ill. 104; *Smith* v. *Niles,* 20 Vt. 320, 49 Am. Dec. 782; *Allen* v. *McCalla,* 25 Iowa, 464, 96 Am. Dec. 56; *Sheffield* v. *Key,* 14 Ga. 528; *Crawford* v. *Newell,*

23 Iowa, 453; *Levy* v. *Shockley*, 29 Ga. 710; *Newman* v. *Hook*, 37 Mo. 207, 90 Am. Dec. 378; *Gates* v. *Flint*, 39 Miss. 408; *Watts* v. *Cleveland*, 3 E. D. Smith, 553; *Douglas* v. *Orr*, 58 Mo. 573.

To avoid the conclusion from the foregoing authorities, the appellant seeks to maintain that it was the debt due to Morgan R. Wise from said bank which the constable levied upon, and not the money which he had on deposit. The officer says in his return that he levied on money—$1,233.91. This concludes the appellees from claiming that anything else was levied on. As to the party who procured the levy, the return of the officer is an absolute verity. Freeman on Execution, 364; *Hallowell* v. *Page*, 24 Mo. 590; *Allen* v. *Martin*, 10 Wend. 300, 25 Am. Dec. 564; *Bank* v. *Domigan*, 10 Ohio, 220; *Paxson's Appeal*, 49 Pa. St. 195; *Brown* v. *Kennedy*, 15 Wall. 597.

As long as the return remains in force, it is conclusive, either of its validity or invalidity. Freeman on Executions, 387, p. 653; *Willington* v. *Gale*, 13 Mass. 483; *Williams* v. *Amory*, 14 Mass. 28, 29.

The return cannot be supplemented or added to by parol evidence. Freeman on Executions, 365, p. 603.

The statutes of the territory provide for a levy on a debt by a garnishment proceeding, and in no other way.

The question as to whether or not the payee of a check can maintain an action on the check against the bank before the bank has accepted the check, does not arise in the case. The only person who could raise the question is the bank, and it has not done so.

Frank Hereford, for Appellees.

KIBBEY, J.—On the 24th of March, 1889, the appellees were copartners in the banking business at Nogales, Arizona, and had on general deposit, in the ordinary course of their business, $1,233.91, the money of one Morgan R. Wise. On that day, James Speedy, a constable of district No. 18 of Pima County, had in his hands an execution issued on a judgment rendered in the district court of Pima County, in favor of J. C. Waterman, against F. M. Vernon, S. B. Wise, and Morgan R. Wise, for $506, upon which there was due that

amount, and accrued interest and costs. On the 25th of March the constable, as he testifies, levied upon $1,233.91 belonging to Morgan R. Wise, the same being held under an injunction issued out of the district court for Pima County; also notifying Melczer & Co. that, if that injunction was dissolved, that execution would hold good. This the constable says, in response to a question asked him to detail all the circumstances of the service of the execution, was all he did. The officer did not take possession of the money. The constable indorsed upon the execution his return, which is as follows: "I hereby certify that I received the within execution on the twenty-fourth day of March, 1889, and served the same on the twenty-fifth day of March, 1889, by levying upon $1,233.91 in the hands of William Melczer & Co., at Nogales, Pima County, A. T., belonging to the within-named defendant, Morgan Wise; the above being amount under attachment and suit pending in district court, Pima County, A. T. [Signed] James Speedy, Constable, Precinct No. 18." The execution was dated 20th March, 1889, and was returnable within ninety days. Nothing more was done under the writ. On the seventh day of June, 1889, Morgan R. Wise signed and gave to the appellant a check upon appellees for $642. On the 24th of June, 1889, the check was presented to appellees for payment, which was refused because of the levy, if levy it was, of the Waterman execution. Wise had at that time a credit of $642 with Melczer & Co. On the 26th of June, 1889, appellant began suit against appellees for $642. There was a trial by the court, and finding and judgment for the appellees.

This case presents some anomalous features. The complaint alleges that on the 24th of June, 1889, the appellees were indebted to appellants in the sum of $642.50; that on said day said sum of money was on deposit in appellees' bank, subject to appellant's order, and was due the appellant, and unpaid; and that appellant on said day drew on appellees, and payment was refused. The complaint is insufficient to constitute a cause of action, upon the theory of plaintiff. The only legal inference to be drawn from it is that appellant had deposited $642.50 with appellees, and that appellees refused to honor his check for that sum. But the facts disclosed upon the trial, and before stated, negative any such

inference.  The trial proceeded upon the theory, without question, that appellant, as holder of a check drawn by Morgan R. Wise for $642.50 upon appellees, had a cause of action against appellees for their failure to pay the check upon presentation.  It is not pretended that appellees accepted the check, or did any act equivalent to an acceptance. A bank is not liable to the holder of a check drawn by a general depositor for its refusal to pay the check, though the bank has sufficient funds of the drawer to pay the amount called for. *Bank* v. *Millard*, 10 Wall. 152; *Bank* v. *Whitman*, 94 U. S. 343; *Ætna Nat. Bank* v. *Fourth Nat. Bank*. 46 N. Y. 82, 7 Am. Rep. 314, and numerous other cases.  And especially would the bank be not liable for its refusal to pay the check under circumstances such as those that existed in this case, where it must determine between the rights of rival claimants.  It is unnecessary for us to proceed further to consider the question raised and discussed by counsel in their briefs.  Two points, however, we will notice, as they may again arise in subsequent proceedings.  Appellant contends that the levy of the execution was insufficient—1. Because it was addressed to, and served by, an officer unauthorized thereto by law; and 2. That the money levied upon by the officer was not reduced to possession by him.

Section 2 of the Acts of 1889 (p. 37) prescribes specifically that the execution must be directed to the sheriff of the county where it is to be served.  This repeals the provision in paragraph 1895 of the Revised Statutes of 1887 that the execution might be directed to the sheriff or any constable of the county.  Appellees argue that the mention of the "sheriff or other officer" in other parts of the act of 1889 evinces the intention of the legislature not to repeal the provision in the Revised Statutes of 1887.  The "other officer" referred to in the act of 1889, we think, refers to the provision of section 512 of the Revised Statutes of 1887, which designates other officers who shall perform the duties of sheriff in case of his disqualification by reason of interest.  The attempted levy was insufficient.  The money, to have constituted a valid levy, must have been reduced to possession by the officer. This is expressly required by statute.  Clause 2, sec. 9, Acts 1889, p. 39.  Appellees contend that the acts of the officer

constitute a levy upon a debt due Morgan R. Wise. We think clearly not. The fact that the bank was a simple debtor of Wise, and that Wise had no specific money in the hands of the bank as bailee, cannot now operate to give a different effect to the acts of the officer. It simply shows that the officer was mistaken either as to the facts, or in the matter of his duty.

There are other questions presented, but, for the reason first stated, the judgment must be affirmed; and it is so ordered.

Sloan, J., concurs.

WRIGHT, C. J., dissenting.—On the twentieth day of March, 1889, J. C. Waterman, obtained from the clerk's office of the district court of Pima County, Arizona, an execution against F. M. Vernon, S. B. Wise, and Morgan R. Wise, members of the firm of Vernon, Wise & Co. Said execution was directed to the sheriff or any constable of said county. Subsequently, and on the twenty-fifth day of March, one James Speedy, a constable, made a levy of said execution, and made thereon the following return: "Territory of Arizona, County of Pima—ss.: I hereby certify that I received the within execution on the 24th day of March, 1889, and served the same on the 25th day of March, 1889, by levying on $1,233.91 in the hands of William Melczer & Company, at Nogales, Pima County, A. T., belonging to the within-named defendant, Morgan Wise; the above amount being under attachment, and suit pending in district court, Pima County, A. T. James Speedy, Constable, Precinct No. 18." On the seventh day of June following, the said Morgan R. Wise drew a check in favor of the appellant on Melczer & Co., for the sum of $642, which was presented at their bank in Nogales for payment on the twenty-fourth day of June, 1889. Payment thereof was refused, however, by the appellees, on the ground that the amount due Wise in their bank had been levied upon by virtue of Waterman's execution. Now, it is not disputed that James Speedy was a constable in Pima County; but it is contended that, as such, under our execution law of 1889, he could not make a valid levy on an execution issued from the office of the clerk of the district court of that county, although the

execution was issued to the sheriff or any constable of the county. We do not think this position tenable. True, section 2 of the Execution Law of 1889 does provide that the writ of execution shall be in the name of the territory, shall be subscribed by the clerk, sealed with the seal of the court, be directed to the sheriff of the county where it is to be served, etc. The learned counsel for the appellant contend that this was clearly an intentional change of the law; the purpose of the legislature being to restrict the clerk to the sheriff only in issuing executions. But we think not. The whole act must be construed together, and, if possible, all the sections thereof be made to harmonize, and each be vital. Now, section 3 of the same act provides that "the execution may be made returnable, at any time not less than ten nor more than ninety days after its receipt by the sheriff or other officer to whom directed, to the clerk of the court issuing it. When the execution is returned the clerk must note on the judgment book the amount made by the officer," etc. Again, section 12 of said act provides that "the sheriff or other officer must execute the writ against the property of the judgment debtor," etc. "The judgment debtor may point out to the levying officer such property as he may wish to be levied upon; and, if the officer deems the same sufficient," etc. If the legislature had intended that the sheriff only could levy an execution issued by the clerk of a court of record, would they have used the phrase "or other officer"? To say that the clerk can issue his execution to none but the sheriff is to make this phrase utterly meaningless. Chapter 2 of the Revised Statutes of 1887 was not repealed by the Execution Law of 1889. By that chapter, constables are empowered, and it is thereby enjoined upon them as an imperative duty, to serve and return all process in their counties directed or delivered to them by the justice, or any other competent authority. Ordinarily the sheriff occupies about the same relation to the courts of record that the constable does to the justice of the peace courts. Ordinarily the clerk would direct his execution to the sheriff, and ordinarily the justice of the peace would issue his to the constable; but it does not follow that the one might not also be directed to the sheriff, and the other also to the constable, as well. It is the validity of the execution that lends force to the levy, rather than the

manner of making it. These statutes are held to be mostly directory. See *Blood* v. *Light,* 38 Cal. 649; *Smith* v. *Randall,* 6 Cal. 50; *Webber* v. *Cox,* 6 T. B. Mon. 110. Of course, we do not mean that the requirements of the law must not be substantially complied with. It is our opinion, however, that there was statutory authority for issuing the execution to the sheriff or constable, and that the constable was competent to make the levy.

In the next place, it is urged by the appellant that, as the ninety days had expired within which the execution had to be returned under the statute of 1889, it had become *functus officio* before appellant presented his check to the appellees' bank for payment, and that, as several months had elapsed after the return of said execution, without sale, before this cause was tried below, therefore, if there had ever been a valid levy on any property upon which said execution could have become a lien, it (the lien) would have expired by operation of law long before the trial. We are unable to concur in this view. In one sense, after the return-day of an execution, it does become *functus officio,*—i. e. the officer could not make a new levy under that writ, but otherwise the execution still has virtue; and though, if it ever had been, it would then cease to be a lien upon any property not levied on, still, if there had been a valid levy thereon, on property subject to execution, does not the lien created thereby continue vital notwithstanding the return-day may have elapsed, and the execution have been returned without sale? And is it not true that after the return-day of the execution the officer could proceed to enforce the levy made by virtue of it, by making a valid sale of the property levied on, even without the assistance of a *venditioni exponas?* From its frequency, it was once supposed that this writ was necessary to authorize the officer to make the sale, but such was not the case. Such a writ was never essential to empower the officer to make the sale. It was, and may now sometimes be, requisite to compel him to do so. There are many reasons that make this a salutary rule. Suppose the officer receives an execution, and, though he uses the utmost diligence, he is unable to find property subject to its levy until five days before the return-day thereof. He cannot sell without giving ten days' notice

of sale. He would therefore be compelled to return his exe-
cution without sale, although he had made a levy when the
execution was vital. Will it be seriously contended that he
could not still proceed, and make a valid sale, with or with-
out a *venditioni exponas?*

Mr. Freeman, in his work on Executions, says: "Notwith-
standing the return of the *fieri facias,* he [the officer] could
sell the property levied on as well without as with a *venditioni
exponas.* If he was willing to proceed, the issue of this writ
was a clear superfluity." Sec. 58. And further the same
learned author says: "The effect of a sale under a *venditioni
exponas* is the same as though the sale had been made under
the original writ before the return-day. The purchaser can
obtain no better nor greater title than would have passed un-
der the original writ; but, on the other hand, the lien of the
original writ, and of the levy thereunder, continue under the
*venditioni exponas,* and confer as ample a title as could have
been transferred under and by virtue of the original liens."
Sec. 60. "If a levy be made under an execution, the officer
thereby obtains a special property in the goods levied upon.
He may retain possession, and make a sale after the return-
day of the writ." At common law a *fieri facias* was a lien
upon the personal property of the defendant from the time of
its teste. This rule was modified by statute 29 Car. II. c. 3.
This statute made the execution a lien from the time it was
delivered to the officer, and he was required to note on the
writ the time of its reception. Our statute also contains this
requirement; but perhaps there is no good reason therefor, as,
under the laws of this territory, an execution is clearly no
lien upon the personal property of the defendant until the
time of the levy thereof. Indeed, it seems to us not quite
accurate to say the execution is ever a lien. At least, it seems
more logical to say that the function of an execution that has
been levied upon personal property is to attach the lien of the
judgment, upon which said execution is based, and without
which it would have no virtue, to the property levied on.
From the perishable and transitory nature of personal prop-
erty, and other conditions attaching to it, the law contemplates
that execution sales thereof be briefer and less formal than
such sales of real estate; but there are many things that

operate to excuse delay, or at least that will prevent the defeat of the levy. Where an injunction is served after levy and before sale, even though much time might elapse before dissolution of the injunction, yet when dissolved the original writ and levy would hold, and defeat any intermediate adverse levies; or where a party asserting an adverse right to the property levied on commences legal proceedings so immediately after the lapse of the return-day of the writ as to preclude a sale, and in this manner places the property again *in custodia legis*. In the case at bar the return-day of the writ was on the twenty-fourth day of June, and the appellant commenced his suit on the 26th of June; and hence we do not think that the presentation of appellant's check at the bank of appellees the day after, nor the commencement of the suit two days after, the return-day of the execution, defeated the lien attaching by virtue of the levy thereon.

But the most earnest contention of appellant's learned counsel is that the levy herein was invalid because, being upon personal property, the same was not taken possession of by the officer levying. This was generally the common-law rule, but there are many exceptions and modifications innovated by statutes. Perhaps every state and territory in the Union has statutory provisions modifying this rule to a greater or less extent. Arizona has a statute of this kind; and we are quite willing to admit, after a careful examination, that it goes to the verge of extremity in authorizing the levy and sale of interests in personalty not in possession. Indeed, we think it goes further than any statute of the kind of which we have any knowledge, and yet we are not prepared to say it is not a wholesome and effective statute. It is far-reaching, and leads into some unbeaten tracks. It practically does away with the old mode of garnishment proceedings after judgment. Counsel say that the deposit of money by Wise in appellees' bank made them simply his debtor, and that the only way the debt thereby created could be reached was by garnishment proceedings. The statute of 1889 imports quite the contrary. Section 3 of that statute says: "Debts and credits, choses in action, and all other property, both real and personal, or any interests, legal or equitable, in either real or personal property not capable of manual delivery, may be levied upon and

sold under execution." Subdivision 2 of section 9 of said statute then provides that a levy upon the interest of the defendant in personal property to which he is not entitled to the possession is made by giving notice thereof to the person entitled to the possession, etc. Then section 18 provides that "the officer making sale of any personal property not capable of manual delivery shall execute and deliver to the purchaser a certificate of sale, which certificate shall convey to such purchaser all the right which the debtor had in such property on the day the execution was levied." Why is this not preferable to the old mode of garnishment proceedings after judgment, in reaching a debt due the defendant? It is certainly more speedy, direct, and less expensive. Besides, it has a lien more effectual and immediate. At all events, it is the law of this territory. Again counsel say: "There is but one way that a debt can be levied upon and taken for the satisfaction of a judgment, and that is by garnishment proceedings." But we have seen that our statute says there is another way,—by levying an execution upon the debt, selling it, and executing to the purchaser a certificate of the sale; and the statute says this certificate of sale conveys to the purchaser all the interest of the defendant in the debt. Suppose in this case there had been a sale; that A had been the purchaser, and the officer had delivered to him the certificate of sale. Would not said certificate, by force of this statute, have subrogated him to all the rights and interests of Wise in the debt thus levied on and sold? And would not the same results follow if the sale should hereafter be made?

But there is another mode provided by statute for taking a debt in satisfaction of a judgment. This is found in paragraph 1950 of the Revised Statutes, (Execution Law of 1887, section 70,) which is not in conflict with the law of 1889; and it was not, therefore, repealed by it. That paragraph reads: "After the issuing of an execution, any person indebted to the judgment debtor may pay to the sheriff the amount of his debt, or so much thereof as may be necessary to satisfy the execution, and the sheriff's receipt shall be a sufficient discharge for the amount paid." And the concluding paragraphs of that statute provide still another mode of taking a debt in satisfaction of a judgment, viz., where, after the

issuing or return of an execution, the judge is satisfied that any person is indebted to the judgment debtor in an amount exceeding fifty dollars, he (the judge) may require such person to answer concerning the same, and then may order the amount found due the judgment debtor to be applied in satisfaction of the judgment. And it is to be observed that, after the return of the execution by the constable in the case at bar, the appellees filed their answer in court, admitting they had in their hands six hundred and forty-two dollars of money belonging to Morgan R. Wise, that the same had been levied on an execution against Wise, and that they had paid the same into court, and asked to be discharged, etc.

Something has been said about the return of the constable on the execution showing that it was money, and not a debt, that was levied upon; but we think the language of that return makes the legal inference inevitable that it was simply a debt due to Wise upon which the officer made his levy. He levied upon a debt due to Wise which had accrued by virtue of a deposit made by him in appellees' bank. That deposit created a debt, and nothing more. The return says the constable levied upon so much money in the hands of appellees belonging to Morgan R. Wise. The return may be inartistic, and may not very accurately express the facts as to what the officer did; but in this regard the return could be amended at any time. The law will not allow a mere defective return, made by an officer unskilled in technical forms, to inure to the disadvantage of a plaintiff in an execution. We think, however, the return is in substance sufficient, its import being apparent. We are certain the facts are. The appellant ought not, therefore, to complain.

We are satisfied that substantial justice was done in this case. True, the record would seem to indicate that Morgan R. Wise was quite heavily indebted to appellant; and we infer from this record that Mr. Wise possessed the virtue of being quite liberal in the allowance and payment of attorney's fees, for the record also shows that appellant had received considerably over four thousand dollars that large indebtedness from the bank of appellees on checks drawn in his favor by said Wise. It was only the last check drawn by Wise in favor of appellant that appellees

refused to pay, and this for the reason that what was due Wise from them then had been levied on the execution in favor of Waterman. This was a legal excuse, as we think that levy was valid. Let the judgment be affirmed.