[No. 2107.]

THE WESTERN UNION TELEGRAPH COMPANY v. THE BI-METALLIC BANK.

1.   **Banks and Banking—Depositors—Contracts.**

The contract between a bank and a depositor is that it will pay out his money only upon and in accordance with his express direction.

2.   **Bank Checks—Indorsement—Identity—Liability of Bank.**

A check drawn in favor of a particular payee or order is payable only to the actual payee or upon his genuine endorsement, and if the bank mistake the identity of the payee or pay upon a forged endorsement, it is not a payment in pursuance

of its authority, and it will be responsible; but a bank may be relieved from liability for payment to the wrong person, or under an endorsement not genuine, when the circumstances of the case amount to a direction from the depositor to the banker to pay without reference to identification, or to the genuineness of the endorsement.

**3. Same.**

The local agent of a company was directed by the company to pay to W. H. Daily a certain sum. W. H. Daly, a different person, called and claimed to be the person to whom the money was directed to be paid. The agent was not satisfied with the identity, but gave him a check payable to W. H. Daily and took a receipt therefor. The check was endorsed by W. H. Daly, and cashed at a different bank than the one on which it was drawn. The drawee bank paid the check upon the endorsement, without any knowledge of the circumstances under which it was delivered. In an action by the drawer against the drawee bank, defendant cannot escape liability on the ground that the drawer, by delivering the check to Daly, identified him as the person to whom, or upon whose endorsement, payment might properly be made.

**4. Same—Idem Sonans.**

Where a bank paid a check to a person not entitled to it, and the payment was made solely upon a written endorsement, in an action by the depositor against the bank, the question of idem sonans cannot arise.

**5. Same—Notice.**

Where a check payable to W. H. Daily was endorsed by W. H. Daly, that fact was sufficient to have put the bank upon its guard and caused it to have made inquiry.

**6. Same.**

Where a bank had no knowledge of the error of a depositor in delivering a check to the wrong person, and the check was paid upon a written endorsement of a name different from that of the payee, in an action by the depositor to recover the amount of the check, the bank cannot invoke the doctrine, that where two persons are equally innocent and one is bound to know and act upon his knowledge and the other has no means of knowledge, the latter will not be compelled to bear a loss to exonerate the former.

**7. Same—Possession.**

The mere possession of a check will not justify a bank in making payment to the person in possession without identifica-

tion, or without evidence of the genuineness of the endorsement where the endorsement is in question.

*Appeal from the District Court of El Paso County.*

Mr. I. N. STEVENS and Mr. F. W. LIENAU, for appellant.

Mr. J. STANLEY JONES and Mr. CHARLES C. BUTLER, for appellee.

WILSON, P. J.

This suit grows out of the alleged payment of a check drawn by the plaintiff telegraph company upon the defendant bank to a person other than the payee, and without his endorsement. The main facts were contained in an agreed statement, that portion which is deemed material to the determination of this appeal being as follows:

"1.    That on or about the 12th day of December, 1895, the agent and manager of plaintiff's office at the town of Cripple Creek was telegraphically instructed by the plaintiff to pay to one William H. Daily, at Cripple Creek, the sum of one hundred and seventy-two dollars ($172.00).

"2.    That a person presented himself at the office of said plaintiff, at Cripple Creek, representing himself to be said William H. Daily, and was so identified by one S. J. Polin.

"3.    That the agent of the plaintiff thereupon drew a check on defendant's bank for one hundred and seventy-two dollars ($172.00), to the order of William H. Daily, and handed it to the person so representing himself as such William H. Daily.

"4.    That said person was not the William H. Daily for whom the money was intended by said telegraphic message.

"5.    That said check, bearing endorsements as follows:   Wm. H. Daley, S. J. Polin, Blum, and

stamped 'paid' by The First National Bank of Cripple Creek, was paid by the Bi-Metallic Bank, the defendant herein, December 14, 1895.

"6. That none of the endorsements on said check were made in the presence of or with the knowledge of the plaintiff's said agent.

"7. That the name of the person who so received said check from plaintiff's said agent is William H. Daley."

In addition to this, one witness, the agent or manager of plaintiff who drew the check, testified. His evidence was to the effect, in substance, that upon telegraphic instructions to pay a certain amount of money to W. H. Daily, he sent out a notice to that person. Afterwards, in answer to the message, a man presented himself and stated that he was the person to receive the money. He brought with him another man for identification, but the agent, not being satisfied with the identification, and knowing the person brought in for that purpose, as he stated it, to be "no good," he drew up a check for the amount to be paid, naming as payee the person named in the telegraphic transfer, spelling the name as there spelled, D-a-i-l-y, and gave it to the man who represented himself to be Daily; that he did this for the purpose of having the bank identify the payee, he not being satisfied himself. It also appears from his testimony that upon delivering the check, he took from the person representing himself to be the individual for whom the money was intended, a receipt for the money, which receipt was signed Wm. H. Daley. The check seems first to have been cashed by another bank. In due course of business it reached the defendant bank, the drawee, bearing upon its back the endorsements of Wm. H. Daley, S. J. Polin, Blum, and the "paid"

stamp of the First National Bank of Cripple Creek, and was by it paid and charged to the account of the plaintiff.

The contract between the bank and the depositor is that it will pay out his money only upon and in accordance with his express direction. A check drawn in favor of a particular payee or order is payable only to the actual payee or upon his genuine endorsement, and if the bank mistake the identity of the payee, or pay upon a forged endorsement, it is not a payment in pursuance of its authority, and it will be responsible. It is also true, however, that the bank may be relieved from liability for payment to the wrong person, or under an endorsement not genuine, when the circumstances of the case amount to a direction from the depositor to the banker to pay without reference to identification, or to the genuineness of the endorsement. These rules are well settled, and are supported by a long line of decisions of the highest authority. We cite a few: *Dodge v. Bank,* 20 Ohio St. 246; *Dodge v. Bank,* 30 Ohio St. 1; *Pickle v. Muse,* 88 Tenn. 382; *Jackson v. Bank,* 92 Tenn. 155; *Crippen, Lawrence & Co. v. Bank,* 51 Mo. App. 510; *Hatton v. Holmes,* 97 Calif. 208; *Welsh v. Bank,* 73 N. Y. 426; *Bank v. Bank,* 119 N. Y. 200; *Bank v. Bank,* 91 N. Y. 80; *Bank v. Whitmore,* 94 U. S. 343; 2 Daniels on Negotiable Instruments, § 1618, *et seq.; Shipman et al. v. Bank,* 126 N. Y. 319.

It is claimed by the appellee, and such was the ground upon which it is alleged the trial court based its judgment in its favor, that the circumstances of this case are such as to bring it within the exception to the general rule, and thereby release it from responsibility. It is claimed that the plaintiff, by delivering the check to Wm. H. Daley, and by accepting a receipt signed by him in that name, identified him as the person to whom payment might be properly

made, or under whose endorsement the drawee would be authorized to pay. In our opinion, the contention of appellee is not correct, and is not sustained by the authorities which counsel cite because, first, it does not appear that the defendant at the time of payment had any knowledge of the existence of these circumstances upon which it now relies to escape liability. It was not induced in the remotest degree to make payment on account of these circumstances. It did not even make payment to the person who received the check originally, or who claimed to be the payee. It paid to another bank which had in the first instance cashed the check, and in so doing relied solely upon the endorsements. It is not even shown that the bank which first cashed the check had any knowledge of the circumstances attending its delivery by the drawer. The authorities cited by counsel for appellee are all of cases which are clearly distinguishable in this respect from the one at bar. In all, the bank had knowledge, or there was communicated to it some fact or circumstances relative to the action of the drawer from which it might conclude that he had waived further identification, or any question as to the genuineness of endorsement. An additional fact in this case brings out in stronger light the dereliction and neglect of the bank, because in ignorance of all these circumstances attending the delivery of the check, it paid, as we have said, simply upon the face of the endorsement, and that endorsement did not purport to be that of the payee named in the check. It was that of a different name entirely. No question of *idem sonans* can arise, because, if for no other reason, payment was made upon the written endorsement only. The name of the endorser being different from that of the payee, was amply sufficient to have placed

the defendant upon its guard, and caused it to have made some inquiry.

Appellee invokes the doctrine that where two persons are equally innocent, and one is bound to know and act upon his knowledge, and the other has no means of knowledge, the latter will not be compelled to bear a loss for the purpose of exonerating the former. It contends that the plaintiff in this case was in default in giving the check to the wrong person, and that by means of this he was enabled to perpetrate the fraud; that this being the case, it cannot complain of the consequences of its own default against the defendant, who was misled by it without any fault of its own. This doctrine is sound where it is applicable, but we do not see wherein it is applicable under the facts of this case. In the first place, there is no evidence that the defendant was misled by the alleged default of the plaintiff, because it had no knowledge of it. We do not believe it to be in accord with the settled rules of commercial law that the mere possession of a check would justify a bank in making payment to the person who has such possession, without some identification, or some evidence of the genuineness of the endorsement, if an endorsement is in question. If there had been in this case a forged endorsement of the name of the payee, the defendant might possibly have had some ground upon which to stand in support of its contention, but this was not the case. It made payment under the endorsement of a name different from that of the payee. This fact alone would in our opinion prevent it absolutely from setting up this defense.

The judgment will be reversed.

*Reversed.*