## FORT WORTH NAT. BANK v. FIDELITY & DEPOSIT CO. OF MARYLAND.*
### No. 12536.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 13, 1932.

Rehearing Denied March 12, 1932.

Bryan, Stone, Wade & Agerton and Brandon Stone, all of Fort Worth, for appellant.

Albert B. Hall, of Dallas, for appellee.

BUCK, J.

The Fidelity & Deposit Company of Maryland filed suit against the Fort Worth National Bank of Fort Worth, as assignee of a claim against the Fort Worth National Bank made by the Toledo Scale Company. This suit was filed June 8, 1928, and it alleged:

That plaintiff executed its bond in the sum of $1,000 on October 25, 1926, whereby it agreed to pay to the Toledo Scale Company to the extent of that sum any loss sustained by it on account of the wrongful acts of Phillip G. Wade, who was employed by the Toledo Scale Company in Fort Worth. That thereafter the defendant accepted and paid to said Phillip G. Wade, on his unauthorized indorsement, the following checks drawn on it, and payable to said Toledo Scale Company:

| Date | Maker | Date Paid | Amt. |
|---|---|---|---|
| Feb. 24, 1927, | Turner & Dingee, Inc. | Feb. 26, 1927, | $ 30.00 |
| Feb. 5, 1927, | Bergman Produce Co. | Feb. 8, 1927, | 260.00 |
| Feb. 17, 1927, | Leonard Bros. | Feb. 17, 1927, | 185.25 |

And, on the unauthorized indorsement of said Wade, paid to him, or gave him credit for, and collected from the drawee banks, the following checks, payable to the Toledo Scale Company:

| Date | Drawer | Drawee | Date Collected | Amount |
|---|---|---|---|---|
| Jan. 19, 1927, | 'M' System Mfg. Co. | First Natl. Bank of Ft. Worth | Jan. 20, 1927, | $142.61 |
| Mar. 5, 1927, | 'M' System Mfg. Co. | First Natl. Bank of Ft. Worth | Mar. 7, 1927, | 42.40 |
| Mar. 5, 1927, | 'M' System Mfg. Co. | First Natl. Bank of Ft. Worth | Mar. 7, 1927, | 381.22 |
| Jan. 21, 1927, | Wm. Schmidt, | The Texas Natl. Bank of Fort Worth, | Feb. 1, 1927, | 50.00 |

That the amount of each of said checks drawn on defendant was paid by it to said Wade, or he was given credit therefor, and each of them was charged to the account of the maker thereof, and the amount of each of the remaining said checks was by the defendant paid to said Wade, or he was given credit therefor, and defendant thereupon collected the proceeds of them and each of them, and the amount of each and all of the checks described herein was by said Wade converted to his own use and benefit. That the indorsement on each of said checks was unauthorized, and the name of the payee was forged on each of them by Wade, and he has failed and refused to account for the proceeds of them, or any of them, or any part thereof, whereby said Toledo Scale Company sustained a loss in the sum of $1,091.49, which was covered by said bond, on account of which plaintiff became liable to pay, and did pay, the said Toledo Scale Company the sum of $1,000, on June 30, 1927, whereupon, and in consideration whereof, said Toledo Scale Company executed and delivered to plaintiff a written assignment and transfer to plaintiff of all of its rights, titles, interests, and causes of action, in, to, or on account of said checks and each of them, and against said banks and each of them, and the plaintiff has been subrogated, not only to all rights which said Toledo Scale Company may have had on account of said checks, but also to the rights of the makers of them and each of them. That the amount of each of said checks represents a payment to said Toledo Scale Company for which a customer was given credit, and which was, by said Phillip G. Wade, converted to his own use and benefit, without the consent of said Toledo Scale Company, or plaintiff, and without authority to indorse the same, and, by reason of the premises, defendant holds for the use and benefit of plaintiff the sum of $1,091.48, and plaintiff has made demand for payment thereof, but defendant has failed and refused to pay the same, or any part thereof.

On November 26, 1929, plaintiff filed its first amended original petition, in which, after alleging substantially the same as alleged in the original petition, plaintiff alleged that defendant gave Wade individual credit for all of the checks deposited, and paid the amounts of said checks to Wade, and charged said amounts to the makers of said checks, and that it had withdrawn the amount of said checks, the indorsement of which was so forged by Wade, from the Toledo Scale Company, and that plaintiff became liable to pay to the Toledo Scale Company the $1,000

*Writ of error granted.

stipulated in the bond, and did pay the same on June 30, 1927, and that the Toledo Scale Company, in consideration thereof by written assignment, assigned and transferred said claims to the plaintiff.

On the same day that the plaintiff's first amended original petition was filed, to wit, November 26, 1929, the defendant filed its first amended original answer, in which it pleaded the statute of two years' limitation.

The cause was tried before the court, and judgment was rendered for plaintiff for $1,-306.32, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment until paid. From this judgment the defendant has appealed.

Upon request, the trial court filed his findings of fact and conclusions of law as follows:

"Findings of Fact.

"1. For value received, on the 25th day of October, A. D. 1926, plaintiff executed and delivered its written bond whereby it agreed to indemnify Toledo Scale Company, a corporation, against the loss of any money or other personal property, (including money or other personal property for which the employer was responsible, the employer being said Toledo Scale Company), through the fraud, dishonesty, forgery, embezzlement, or wrongful abstraction of its employee, Phillip G. Wade, who was employed by it in Fort Worth, Texas, on, towit, the 19th day of October, A. D. 1926, and continued to be in its employ until, towit, the 1st day of April, A. D. 1927.

"2. That Wade was employed as a salesman; that he had no authority to endorse and negotiate checks payable to the order of his employer; that he was expressly required to make daily remittances of all cash and evidences of payment received by him for his employer, and in no event to use for his individual credit or use for expenses of his agency, any money collected for it, and to send to it at once any and all checks, drafts, or other negotiable instruments made payable to it, and to, under no circumstances, sign its name.

"3. That said Wade received each of the checks described in plaintiff's pleading, on account of merchandise sold by him as agent and employee of said Toledo Scale Company; that notwithstanding the fact that he was not authorized to endorse them, or to write its name on them, or to do anything with them except send them to it, he endorsed them, in substance, as follows, towit:

" 'Toledo Scale Company, Fort Worth, per Phillip G. Wade, Mgr.,' and, with the aid of the defendant, negotiated them by presenting them to the defendant for his individual credit and use, whereupon the defendant gave him, as individual, credit therefor, and charged to the account of each maker thereof, each check drawn on it, and collected from the drawee bank the amount of each check which was not drawn on it, and paid to him and for his individual use and benefit the amount of such credit, and the proceeds of such checks, and thereby converted and misapplied and participated in the conversion and misapplication of such checks and such credits and the proceeds, without authority or ratification of any maker thereof or the Toledo Scale Company or plaintiff; that each of said checks and the amount thereof was by the bank upon which it was drawn, charged to the account of the maker thereof, and surrendered to such maker.

"4. That by reason of the premises, Toledo Scale Company sustained a loss to the extent of the aggregate amount of said checks, on account of which, and said bond, plaintiff became liable to pay and did pay to said Toledo Scale Company the amount of said bond, as alleged by it, whereupon, and in consideration whereof, said Toledo Scale Company, by written instrument duly executed and delivered, assigned and transferred unto plaintiff any and all causes of action and rights against the defendant as well as the other banks involved, on account of the wrongful use of said checks.

"5. That although plaintiff duly made demand therefor, no reimbursement has been made on account of the loss or any part thereof.

"Conclusions of Law.

"1. That as to the checks drawn on defendant, it was obligated to pay only to the payee or to a party by it authorized to receive payment; that as to the other checks, it was obligated to pay the proceeds thereof only to the payee or a party by it authorized to receive payment; that by reason of the facts, defendant converted and misapplied and participated in the conversion and misapplication of said checks and the amount represented thereby, and it, together with said Wade, is primarily and ultimately liable for the loss resulting therefrom.

"2. That defendant is liable to plaintiff for the sum of $1306.32, with interest thereon at the rate of 6%, per annum from the 9th day of October, A. D. 1930, until paid, and plaintiff is entitled to judgment therefor, as rendered."

Opinion.

We are of the opinion that the payee of the checks, to wit, the Toledo Scale Company, nor the assignee of said company, the Fidelity & Deposit Company of Maryland, had no cause of action against the defendant bank. In First National Bank v. Whitman, 94 U. S. 343, 344, 24 L. Ed. 229, the Supreme Court of the United States held that the payee of a check or draft issued by the United States

696

Treasurer had no right of action against the bank which cashed said check upon a forged indorsement. The following language was used:

"* * * This court held [in Bank v. Millard, 10 Wall. 152, 19 L. Ed. 897] that the action [by the payee against the drawee] could not be maintained, upon the principle that there was no privity between the bank and Millard [the payee]. The bank's contract was with the paymaster [drawer of the check] only, and to him only was its duty. It received no money from Millard. It never promised Millard to pay him any money. It had no money belonging to him. It received money from the paymaster, upon an agreement that it would return it to him when called for by him in person, or that it would pay it upon his checks. But it made no such agreement, or any agreement, with Millard. For a failure of duty in this respect it was responsible to the paymaster, with whom it made the contract, and to no one else. If the check was not paid, the arrears of pay to Millard were not paid, and his claim upon the government or the paymaster was not impaired by the giving of the check, which, being presented in due time, was not paid. He was still entitled to demand his arrears. * * * It comes to this, then, that, upon a settlement of accounts between them, a credit was by mistake allowed to the bank to which it was not entitled. The law is, that neither party is to be benefited or to be injured by the mistake. The bank must refund the amount by handing over the sum, or by crediting the same to Mr. Spinner [the drawer] in his next account. * * * It is further contended that such an acceptance of the check as creates a privity between the payee and the bank is established by the payment of the amount of this check in the manner described. This argument is based upon the erroneous assumption that the bank has paid this check. If this were true, it would have discharged all of its duty, and there would be an end of the claim against it. The bank supposed that it had paid the check; but this was an error. The money it paid was upon a pretended and not a real indorsement of the name of the payee. The real indorsement of the payee was as necessary to a valid payment as the real signature of the drawee [drawer]; and in law the check remains unpaid. Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before. * * *"

In Lone Star Trucking Co. v. City National Bank of Commerce (Tex. Civ. App.) 240 S. W. 1000, 1001, it was held that under the Negotiable Instruments Law, §§ 132, 185, 189, 191, Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—132, 6001—185, 6001—189, 6001—191, requiring an acceptance of a check by a drawee bank in writing to sustain a suit on the check by payee against the bank, a drawee bank's payment of a check upon a forged indorsement, stamping the check "Paid," and charging the amount thereof to the drawer's account, does not constitute such an acceptance, nor can the bank's retention of a check so paid after payment be deemed such an acceptance. The Amarillo Court of Civil Appeals cited the Whitman Case, which is recognized as an apparent authority, and said: "Justice Lurton, writing the opinion for the Supreme Court of the state of Tennessee, in the case of Pickle v. Muse, 88 Tenn. 380, 12 S. W. 919, 7 L. R. A. 93, 17 Am. St. Rep. 900, took the affirmative of this question, and the Supreme Court of the United States, in the case of First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229, took the negative. The respective opinions in these cases present very strongly the two sides of the question and need no elaboration. A collaboration of the authorities following the two lines of decision will be found in the notes in Ann. Cas. 1917D, 1055, and 14 A. L. R. 764. We believe that the conclusion of the Supreme Court of the United States is sustained by better reason."

See, also, Bank v. Millard, 10 Wall. (77 U. S.) 152, 19 L. Ed. 897, and Southern Trust Co. v. American Bank of Commerce & Trust Company, 148 Ark. 283, 229 S. W. 1026, 14 A. L. R. 764, by the Arkansas Supreme Court, in which it is said, quoting from the headnotes: "The delivery by a bank of its check to an impostor, in honoring a telegraphic order by its customer to pay money to a person named, is not an acceptance of the order so as to entitle the beneficiary to enforce it."

And in 69 A. L. R. 1068, in Federal Land Bank of New Orleans v. Jeff Collins, 156 Miss. 893, 127 So. 570, it is said, quoting from the headnotes: "Payee could not sue drawee paying check on unauthorized indorsement without notice of defect."

See, also, the notes following these two decisions.

If anybody had a cause of action against the bank for cashing these checks upon a forged indorsement, it would be the drawer of the checks. See First Natl. Bank of Quitman v. Wood County, 294 S. W. 324, by the Texarkana Court of Civil Appeals, and the case of First National Bank of Winnsboro v. First National Bank of Quitman, 299 S. W. 856, by the Commission of Appeals, approved by the Supreme Court.

We conclude that plaintiff had no cause of action against defendant, and that the defendant's general demurrer should have been sustained.

While there are a number of decisions tending to support this cause of action, such

as City National Bank & Trust Co. v. Pyramid Asbestos & Roofing Co., 39 S.W.(2d) 1101, by the San Antonio Court of Civil Appeals, Pierce Petroleum Corp. v. Guaranty Bond State Bank of Mt. Pleasant (Tex. Civ. App.) 22 S.W.(2d) 520, and other cases, yet we conclude that the cause of action, if any, was not against the bank by the payee as plaintiff, or by the assignor of the payee as plaintiff. It is not claimed that the defendant bank had actual knowledge of the forgery.

The judgment of the trial court is reversed, and is here rendered for the defendant.