WALLY ET AL v. L. N. DANTZLER LUMBER CO.

[81 South. 489, Division B. No. 20644.]

1. LIMITATION OF ACTIONS. *Statute of limitations: Action on written instruments. Paid checks or drafts.*
   An action cannot be brought upon a paid or cancelled draft in a way to characterize the suit as upon a written instrument and thus make the six years limitation provided for in Code 1906, section 3097, apply.

2. SAME.

A declaration based upon a cancelled check alone, unaided by other material averments would be an insufficient declaration in law, since in an action between the drawer and payee of a cancelled check such paid or cancelled check on its face contains no promise to pay and carries no presumption of liability whatever.

3. LIMITATION OF ACTIONS. *Statute of limitations. Action on written instruments.*

Where suit was brought in chancery by the drawer against the payee to recover advancements made by checks, the bill could not be supported by the mere presentation of the cancelled checks, but the real purpose of the checks must be shown by material averment and on the trial such averments would have to be sustained by testimony in addition to the cancelled checks and such a suit would not be upon a written instrument and the six year statute of limitations would not apply.

APPEAL from the chancery court of Green County. HON. W. M. DENNY, Chancellor.

Suit by the L. N. Dantzler Lumber Company against W. W. Wally and R. W. Wally. From a decree overruling a demurrer to the bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*Watkins & Watkins* and *Ed Breland*, for appellant.

The case of *Washington v. Sorai*, 73 Miss. 665, is an authority for the appellant. That was a suit upon a deed, against the grantee therein, in which deed it showed upon the face thereof that one thousand dollars of the purchase money was unpaid. Suit was upon a written contract, which expressly showed the indebtedness. It was unnecessary to resort to oral testimony to establish the promise to pay. Judge Cooper used the following language, (page 677): "We are of the opinion that the six and not the three year statute applies. The action is not upon a contract provable by parol but is one provable by writing." And speaking further he says: "The promise to pay is implied by

law, but it is a promise to perform a written contract, and not an unwritten contract.''

This case bears out the distinction which we have endeavored to draw in our original brief, that in order to bring the right of action within the six year statute of limitations, the writing must contain the promise to pay or perform for which suit is brought and in that case the deed which was executed by the grantor and accepted by the grantee showed upon its face the unpaid purchase money which the grantee was to pay, and in view of the fact that the instrument was not signed by the grantee but merely accepted by him, the court said that from the grantee's conduct the promise would be implied. The proof, however of the written obligation was all contained in the deed itself. *Cook v. Abernathy,* 77 Miss. 872. In that case the facts are very meager, but it appears from the brief of counsel that a power of attorney was given to the attorney to represent the claimant, which was proven, as well as the receipt given by the attorney for the collection. Therefore, the court said the claim was not barred by the three year statute of limitations, because the liability of Robson was provable by writing. The plaintiff in that case proved the written contract between the decedent and the attorney in respect to the collection and the written acknowledgment of the attorney that he had collected the debt. The case falls within the rule which we have announced.

Appellee cites the case of *Folkes v. Lee,* 84 Miss. 509, which is a very extreme case. In that case, suit was brought to subject land to the payment of the unpaid purchase money. Judge WHITFIELD, who delivered the opinion of the court, held that the deed should be construed as though it contained the language noted in the following quotation from the opinion: ''The chancellor found as a fact, and we concur in that finding, that nothing had been paid, and the deed may therefore be read as if the recital were as fol-

lows on this point: 'Witnesseth that the said party of the first part in consideration of the sum of four hundred dollars does by these presents grant, bargain, sell, convey etc.''

The court held that such language having been contained in the deed, or the deed having been construed to contain such language this was a sufficient acknowledgment of the debt, the deed having been accepted by the grantee. We direct the attention of the court, however, to the very able dissenting opinion of Mr. Justice TRULY, on page 518, in which we think the manifest injustice and unsoundness of the court's opinion is made evident and incontrovertible. While we are not asking the court to overrule the case, we state that the doctrine should not be extended to cover this case.

The case of *Illinois Central Railroad Company* v. *Jackson Cotton Oil Company,* 111 Miss. 320, and the case of *Y. & M. V. R. R. Co.* v. *Willis,* referred to by appellee's counsel, were suits brought upon a bill of lading. The bill of lading contained in writing the obligations complained of. In other words, in the Jackson Oil Company case the bill of lading directed the carrier to safely transport the cotton seed between two certain points; necessarily the six year statute of limitations applied. It was not necessary for the plaintiff by extrinsic or oral testimony to establish the promise or obligation of the railroad company. The written contract, the bill of lading, contained it. It was only necessary for the plaintiff to show the breach of the written contract. And it necessarily, therefore, followed that the six year statute of limitations controlled the case.

We call attention of the court to the following statements contained in brief for appellee: Page 4: "We do not contend that the checks themselves necessarily constitute a promise to pay. We maintain that the law implies a promise to pay.''

This admission of counsel is fatal to recovery on the part of appellee in this case. The *Sorai case, supra,* does not justify any such statement. What the court meant in the Sorai case, by the language quoted, was that the court would imply an agreement on the part of the appellee, who accepted the deed, to carry out the promise which was in writing. No oral testimony was necessary, however, in that case, to fix the promise. The promise was implied from the writing itself.

We call the Court's attention to the following, page 5 of appellee's brief: "Counsel next contends that the writing relied on must necessarily on its face acknowledge the indebtedness, or import an obligation. We concede that the writing must show facts from which the law must imply or impose an obligation, but we do not admit that a specific promise to pay must appear in the writing."

It may be true that it is not necessary for the specific promise to pay to be necessarily included in the writing, but the facts from which the promise is implied, and the obligation created, must necessarily appear expressly in the writing and not themselves be implied. The trouble about appellee's case is that the checks by themselves, that is to say, the written contract sued upon, do not imply anything. The implication, if at all, is only aided by oral extrinsic evidence, and that being true, necessarily the three year statute of limitations applies. We do not mean to be understood as stating that liability could not be implied from a written contract. But what we meant, and what we contend, is that the liability must be drawn from the written contract itself, and that no oral or extrinsic testimony should be introduced in order to establish the same.

Counsel for appellee, with great frankness, make the following admission, on page 6 of their brief: "In response to counsel's argument, we certainly admit that the mere production in evidence of a check, without testimony that it was for money advanced, alone would

not make out a case against appellants. It would be necessary to show that it was for money loaned or advanced. However, as we have endeavored to show already, parol evidence is clearly admissible to show what the checks were for.''

This admission puts the appellees out of court. The question presented in this case is not as to whether or not oral testimony may be admitted to create the obligation. We think it was perfectly competent for appellee to show facts creating the implied obligation to pay; but the trouble about the rule in this case is that if it is necessary to use oral evidence in connection with a written obligation to show facts from which the law will imply the promise to pay, then in such case the contract is an unwritten contract and not a written one: therefore, the three year and not the six year statute of limitations is applicable.

If the court will bear in mind the following distinction drawn by Mr. Justice CAMPBELL in the case of *Foote* v. *Farmer*, 71 Miss. 178, all difficulty will be eliminated. The language is as follows: ''The statute mentioned bars actions on any unwritten contract in three years, to take a case out of this statute there must be a writing evidencing an acknowledgment, of indebtedness or promise to pay in such terms as to render any supplementary evidence unnecessary.''

Now, the appellees do produce certain checks, and it is competent for them by oral testimony to show certain facts from which the law would imply an obligation to repay the amounts thus advanced; but in view of the fact that it is necessary for them, by extrinsic testimony, to create the promise to pay, the three year and not the six year statute of limitations applies.

The fallacy into which appellee's counsel are driven could not be better illustrated than by the following statement taken from their brief, at the bottom of page 7: ''Suppose that the drafts, having been accepted by the appellees, had not been paid, would it be con-

tended for a moment that the six year statute of limita-
tions would not apply in a suit against appellee on the
drafts brought by the appellants?

Why, certainly not. The holder or holders of the
drafts, whether appellants or other persons, would
make out a complete *prima-facie* case against the appel-
lees by introducing into court the unpaid draft, with their
acceptance thereupon, acceptance of a draft being an
express written obligation to pay it upon the day and
date the same is made payable by the acceptance.
In such case it would not be necessary to resort to
oral testimony to show any facts from which the liabil-
ity of appellees could be inferred. The liability would
be created by the express written contract itself.

We must also call the attention of the court to the
case of *Masonic Benef. Assn.* v. *First State Bank,* 99
Miss. 610. In that case suit was brought by a deposit-
or against a bank. In that case the bank-book and de-
posit slips, both of which were in writing, and the
cancelled. checks, were introduced in evidence. The
court held that the six year statute of limitations ap-
plied, and the court in that case drew the proper dis-
tinction; (A) That it was necessary that the contract
should be in writing; and (B) the promise need not
be expressed but the writing itself must contain the
facts from which the promise is inferred.

We invite the attention of the court to that case,
and invite the court to adopt the rule therein. In the
case at bar, we have nothing in the world but checks,
or drafts. The checks and drafts contain absolutely
no promise to pay, nor neither do they contain any
statement of fact from which any promise can be in-
ferred. The promise to pay cannot be inferred, nor
do these checks or drafts import any obligation what-
soever except by the addition of oral or extrinsic tes-
timony. This being true, it necessarily follows that
the three year statute of limitations applies.

*White & Ford,* for appellee.

It will be noted at the outset that recovery is now sought upon the drafts and checks themselves which are exhibited to and made part of the bill. In some instances, advancement of money was made by draft or bill of lading drawn on appellee by appellants in other cases, advancement ·was made by written check drawn to the favor of appellants and indorsed by them when cashed. As against these advancements, deliver· ies of saw-logs were made by appellants and credited on account, but appellee will insist that the six year statute applies, as the debt, or rather the items of indebtedness are evidenced by writing.

Appellants contend that the case is controlled· by the three years statute of limitation, and not section 3097, Code 1906, which provides a six years limitation. They maintain that a check or draft does not constitute a written contract within the meaning of the statute. In this connection, we will call the court's attention to the fact that section 3097 says nothing about written contracts, but provides that: "All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of action accrued and not after."

Our contention is that the written instruments evidenced the debt, and the law implies the promise to pay. On this point we cite the case of *Washington* v. *Sorai,* found in 73, Miss., page 665. As the court will remember that was a suit to recover the consideration stipulated in a deed. The vendee had taken possession under a conveyance which recited the consideration for the transfer. The vendor filed suit to recov-· er the balance of the purchase money, the amount of which was shown by the deed. The grantee had not signed the deed, and· there was therefore no written promise to pay. The court held that: "Whether the vendor proceeded on the promise contained in the deed

or that implied by the law from the vendee's accep-
tance of the deed, the right of action rested on a con-
tract provable by writing, and that the three years
statute did not apply.''

Judge COOPER in delivering the opinion of th court
says at page 677: ''The promise to pay is implied by
law, but it is a promise to perform a written and not
an unwritten contract.''

We do not contend that the checks themselves neces-
sarily constitute a promise to pay, but we maintain
that the law implies a promise to pay. The amount
of the debt and the date thereof is evidenced by writ-
ing. Appellants cite the case of *Fletcher* v. *Gillard,*
62 Miss. 8. We do not consider that this authority
has any application here. It went off on the point that
there was no written promise to pay. Certain letters
signed by the parties sought to be charged were intro-
duced, but they did not promise to pay any specific
amount, nor any date when it would be paid.

Appellants next rely on the case of *Foote* v. *Farm-
er,* 71 Miss. 148. In that case an order was given by
the debtor to deliver to the creditor a certain county
warrant. The payee did not get the warrant and after-
wards when more than three years had expired, it was
sought to charge the debtor on the order. The court
very properly held that the order did not constitute
an acknowledgment of any indebtedness, nor any
promise to pay nor could any be implied from it.

Great reliance is placed by appellants on the case
of *Pate Lumber Company* v. *Southern Ry. Co.,* reported
in 115 Miss. 402. We do not conceive, however, that
the case is applicable. That case seems to have been
pretty thoroughly briefed by the lawyers, but the opin-
ion of the court delivered by SMITH, Chief Justice, did
not enter into any lengthy discussion of the principles
involved, nor did it differentiate the various cases
cited by the respective counsel. All the court really held
in that case was that the Railroad Company could not

recover after the expiration of three years, balance alleged to be due it by a shipper on consignments of freight. It will be noted, and was so pointed out by the court in that case, that there was no writing signed by the party to be charged by which any obligation to pay was expressed or could be implied.

The court stated that the case was governed by the decision in the case of *Buntyn* v. *Building & Loan Association*, 86 Miss. 454.

Counsel next contend that the writing relied on must necessarily on its face acknowledge an indebtedness or import an obligation. We concede that the writing must show facts from which the law will imply or impose an obligation, but we do not admit that a specific promise to pay must appear in the writing. Counsel then say that the checks may have represented a gratuity, or, they may represent money which appellee owed to appellants or other things. In other words, they insist that the writing must show the whole contract, and that parol evidence would not be admissible to show what the writing was for. This contention is entirely erroneous, we submit, and does not comport with decisions of this court.

See the case of *Masonic Benefit Association* v. *First State Bank,* 99 Miss. 610. If this were a suit in the circuit court where recovery was sought for money advanced to appellants, by the written checks or drafts, the declaration alleging an implied promise to pay within a reasonable time, the suit being founded on the writings, and failing to pay, would it be contended that the three year statute of Limitation would apply to the case? The same rule prevail here, where in effect, the suit is based on advancement of money, the written evidence of debt and the promise to pay which the law implies. In response to counsel's argument, we certainly will admit that the mere production in evidence of a check without testimony that it was for money advanced or loaned, would not make out a case against appellants.

It would be necessary to show that it was for money loaned or advanced. However, as we have endeavored to show already, parol evidence is clearly admissible to show what the checks were for.

Appellants next insist that all implied contracts are barred by the three year statute of limitation. If they mean by this that all obligations to pay implied by the law for writing, are barred by the three year statute of limitation, we must dissent from that position; as this court has squarely held in the case of *Washington* v. *Soria* and *Masonic Benefit Association* v. *Bank, supra,* and many other cases, the law implies a promise to pay from a given state of facts. Counsel go so far as to say at page 18 of their brief that: "That there can not be any such thing as a written implied contract."

They do not say, however, that there is no such thing as a contract or legal obligation implied from a writing. In this connection see the case of *Musgrove* v. *City of Jackson,* 59 Miss. 390. Counsel next cite the case of *Buntyn* v. *Building & Loan Association,* 38 Miss. 345. As we have referred to this case already we will not discuss it further here. The obligation of appellants is sufficiently evidenced by writing signed by them. Of course the drafts were nothing more nor less than accepted orders on appellee. The exhibits to the amended bill show that these drafts were drawn by appellants and by them endorsed. After they were accepted by appellee, they were undoubtedly a written contract en- forcible against appellee at the suit of appellants. Until they were accepted by appellee, of course it would not be bound thereby. But having accepted them, they were a written obligation on the part of appellee to pay the sum represented by the draft.

We will now cite decisions of the court which we think sustain our contention. We rely first on the case of *Musgrove* v. *City of Jackson,* reported in 59, Miss. 390. As both sides have cited that case and discussed it, we will not consider it further here.

In the case of *Cocke* v. *Abernathy*, 77 Miss. 872, the court held that a receipt for money collected imported an obligation on the part of the attorney who made the collection to repay it, and the six year statute applied.

In the case of *Fowlke's* v. *Lea*, 84 Miss. 509, it was held that the grantee in a deed would be liable at any time within six years for the purchase money at the suit of the vendor where the grantee had not signed the conveyance. The same was held in the case of *Washington* v. *Soria*, cited *supra*.

In the case of *Y. & M. V. R. R. Co.* v. *Willis*, 111 Miss. 303, the court held that the six year statute applied in a suit against the Railroad Company for loss of freight brought by the shipper who held the bill of lading. A part of the shipment was lost in transit, and the shipper brought suit to recover its value. The bill of lading did not show the amount of the commodity shipped, and parol evidence had to be offered to show that.

In the case of *Masonic Benefit Association* v. *First State Bank*, reported in 99 Miss., page 610, the court held that the six year statute applied in a suit by a depositor against the bank for paying a check, the endorsement of which was forged. Necessarily, parol evidence was admitted to show the endorsement was forged, and that the bank paid the check without the depositor's authority. The court further held that the depositor's bank book constituted a written contract on which the suit could be based, and the six year statute applied.

The foregoing should be sufficient, we submit, to uphold the decision of the lower court. Appellants should therefore be required to answer the bill, upon affirmance of the appeal.

STEVENS, J., delivered the opinion of the court.

This is the second appeal of this case. The opinion of this court as reported in 114 Miss. 601, 75 So. 433,

has a full statement of the pleadings as then presented. We sustained a demurrer to the original bill, but remanded the cause with leave to complainant to file an amendc ˈ bill. After the cause was remanded to the chancery court, an amendment to the bill was filed, and complainant by this amendment seeks to recover upon certain checks and drafts, some of which are made exhibits, while others are alleged to have been lost. After the amendment, appellants renewed their demurrer to the bill as amended, the chancellor. overruled the demurrer, and from his decree this appeal is prosecuted.

The original bill, among other things, averred that the complainant was doing a regular sawmill business, was buying sawlogs and manufacturing the same into lumber, and arranged with the defendants to cut logs from their own lands and the lands of others and float them down the rivers to Moss Point for the account of complainant; and that in these mutual dealings large advancements were made by checks issued by complainant in favor of the defendants; and that certain drafts. were drawn by defendants on complainant, which drafts were duly accepted and paid. An itemized statement of the account was made an exhibit to the original bill showing the various advancements and the alleged credits from the proceeds of the logs delivered by the defendants to the complainant's manufacturing plant at Moss Point. The original bill prayed for the balance due on this itemized account. The extent and character of the amendment to the original bill may be stated in language of counsel for appellee, as follows:

"The gist of the amendment was that the indebtedness alleged to be due appellee arose from a number of advancements made appellants by written drafts and checks. Copies of these written instruments were attached to the amended bill and made parts thereof. . . . Recovery is now sought upon the drafts and checks themselves, which are exhibited to and made parts of the bill."

The demurrer, which was renewed to the bill as amended, submits that the items attempted to be sued for are barred by the three-year statute of limitation, while appellee insists that the six-year statute of limitation applies. Appellants also insist that the law of the case as announced on the former appeal is controlling and that no new issue was presented by the amendment. We held on the former appeal that the account sued on was barred by the three-year statute. We are now confronted with the question as to whether the complainant may declare upon paid and canceled checks and drafts, and thereby change the suit from one upon an open account to an action upon these checks and drafts so as to escape the three-year statute of limitation.

In disposing of the present appeal it is unnecessary, we think, to discuss to what extent the rule of the law of the case applies and controls this second appeal. We proceed to a consideration of appellee's contention that "the written instruments evidence the debt and the law implies the promise to pay," and consequently that section 3097, Code of 1906, applies. This in a way presents two questions: First, may a complainant or plaintiff in an action sue upon a paid and canceled check or draft in a way to characterize the suit upon a written instrument; and, secondly, has the complainant done so in this case?

In *Lehman* v. *Powe,* 95 Miss. 446, 49 So. 622, one claiming to be the creditor of the estate of T. J. George, deceased, attempted to probate certain checks which had been issued, paid, and cancelled. "The probate consisted in presenting to the clerk two canceled checks, with the affidavit required" by our statute. Our court, by SMITH, J., observed:

"These canceled checks disclose no liability at all on the part of the estate to any one. In fact, they showed no liability from any person to another, and could not have been used as a foundation for a suit in

any court. They could have been used, it is true, as evidence in a suit for money loaned, if in fact they related to such a transaction, but only as one link in the evidence necessary to maintain such a suit. Their mere introduction in evidence in such a suit, unaided by other evidence, would not have proven anything.''

If this be good law and controlling as an authority, a declaration based upon the canceled check alone, unaided by other material averments, would be an insufficient declaration in law. The position is sound, we think, that, in any action between the drawer and payee of a canceled check, such paid or canceled check on its face contains no promise to pay and carries no presumption of liability whatever. This is not a suit upon an unpaid check or upon a draft which has been accepted but is unpaid. Here the bank has honored and paid each of the checks and drafts sued upon. If the checks remain unpaid after having been duly presented for payment at the proper bank, they would then import a ''debt from the drawer to the payee.'' 2 Daniel on Negotiable Instruments, par. 1646. The presumption ordinarily would be more against than in favor of the drawer. As stated by the Supreme Court of Idaho, in *Camas Prairie State Bank* v. *Newman,* 15 Idaho, 719, 99 Pac. 833, 21 L. R. A. (N. S.) 703, 128 Am. St. Rep. 81:

''Usually a check is given for money borrowed or a debt contracted, and in commercial transactions, as well as in law, it is equivalent to the drawer's promise to pay, and an action may be brought thereon as upon a promissory note. 1 Morse on Banks & Banking, section 388.''

The check, whether unpaid or paid, carries no presumption of an obligation on the part of the payee to refund the amount of money thus transferred. It is elementary that to recover the money thus paid the declaration or bill must set forth the character of the transaction, or, in other words, state the real contract between the parties. The check may evidence borrowed

money or may discharge an honest obligation which the drawer then owes the payee. The canceled check on its face is not a written promise of the payee, and the law would not imply a promise from the mere introduction of the paid check. The amended bill itself answers the second inquiry presented. The pleader in this case did not stop with the mere statement and presentation of paid checks and drafts, but the bill expressly charges that these drafts and checks were issued as advancements upon sawlogs to be cut, rafted and delivered by the defendants to the complainant at its manufacturing plant at Moss Point. There was a running account extending over a long period of time. The bill alleges that the defendants failed to deliver a sufficient number of logs to pay back the moneys advanced by means of these checks and drafts, and the suit after all is a suit to recover money advanced on timber to be cut and delivered. The bill is sufficient to state a cause of action, but its sufficiency does not rest alone upon the presentation of the canceled checks. The real purpose of these checks must be shown by material averments of the bill and upon trial would have to be sustained by competent testimony, in addition to the canceled documents themselves.

But it is insisted by counsel for appellee that this is not alone a suit upon written instruments, but one upon a promise which the law implies from the written checks and drafts, and in aid of this contention reliance is had upon *Washington* v. *Sorai,* 73 Miss. 665, 19 So. 485, 55 Am. St. Rep. 555; *Masonic Benefit Ass'n* v. *Bank,* 99 Miss. 610, 55 So. 408; *Musgrove* v. *City of Jackson,* 59 Miss. 390; *Cock* v. *Abernathy,* 77 Miss. 872, 28 So. 18; *I. C. R. R. Co.* v. *Jackson Oil Co.,* 111 Miss. 320, 71 So. 568; and other decisions cited in the brief, in which the court applied the six-year statute of limitation. None of the cases cited and relied upon are in our judgment controlling. *Washington* v. *Sorai, supra,* was a suit for the purchase money of lands conveyed by deed, and the

deed expressly showed the contract between the parties and the amount of indebtedness sued for. It is true there was no express promise on the part of the vendee to pay the consideration, but Judge COOPER, speaking for the court, well stated that— "The promise to pay is implied by law, but it is a promise to perform a written, and not an unwritten, contract."

He also stated affirmatively that— "The action is not upon a contract provable by parol, but is one provable by a writing."

*Fowlkes* v. *Lea,* 84 Miss. 509, 36 So. 1036, 68 L. R. A. 925, 2 Ann. Cas. 466, was another action of such kind for the unpaid purchase money, and, under the interpretation which the court gave of the deed in that case, our court ruled in line with the holding in *Washington* v. *Sorai.* In *I. C. R. R. Co.* v. *Jackson Oil Co., supra,* and *Y. & M. V. R. R. Co.* v. *Willis,* 111 Miss. 303, 71 So. 563, the actions were essentially based upon bills of lading. The position of appellee is plausible under the authority of *Cock* v. *Abernathy,* 77 Miss. 872, 28 So. 18, but a close analysis of the facts of that case discloses that there was a written power of attorney under which the attorney represented the claimant in the collection of a certain claim, and there was a written receipt given by the attorney for the proceeds of the collection. From these documents the court concluded that the claim was not barred by the three-year statute because the liability was provable by writings. Properly understood, the case mentioned is not, we think, at war with the views which we entertain. The true test was stated by Judge CAMPBELL in *Foote* v. *Farmer,* 71 Miss. 148, 14 So. 445, by the following language:

"The statute mentioned bars actions on any unwritten contract in three years. To take a case out of this statute, there must be a writing evidencing an acknowledgment of indebtedness or promising to pay, in such terms as to render any supplementary evidence unnecessary."

In *Masonic Benefit Association* v. *First State Bank,* *supra,* the action was by a depositor against a bank and was based upon the deposit slips, canceled checks, and bank passbook. The case is clear upon the rule that a promise may be implied from the writings, but the action in that case after all was based essentially upon the writings and especially upon the bank passbook evidencing the deposits. The court stated:

"It is only necessary to resort to appellant's bank passbook and certificates of deposit, in connection with the canceled check in question, all of which are in writing. From the bank book and certificates there was an implied promise by appellee to return to appellant all funds deposited with it, not legally transferred by the appellant by check or otherwise."

The true distinction was clearly drawn in that case. It cannot be said that from the canceled checks and drafts in the case at bar, unaided by other testimony, there is an implied promise to return the funds thus transferred. We cannot escape the conclusion that the present suit is one essentially to recover back moneys advanced by the complainant to the defendants; that the promise to repay these moneys is not evidenced by writing; that to maintain this suit successfully something must be averred and proven in addition to the canceled checks themselves; and that these canceled checks only serve "as one link in the evidence necessary to maintain such a suit." It follows that the demurrer to the amended bill should have been sustained. The decree of the learned chancellor will be reversed, and the bill as amended dismissed.

*Reversed and dismissed.*