## WILEMAN *v.* KING.

[82 South. 265, Division B. No. 20806.]

1. PAYMENT. *Check.*

A check is not a payment, unless the check is paid, unless it is specially agreed by the parties that the check, whether good or not, shall have that effect and the burden of proof always rests on the party asserting it to show that the check was to have that effect. The presumption is against its being so received, and this presumption can only be overcome by clear proof to the contrary.

2. SAME.

Where a mortgagee was given a check by the mortgagor but because of illness did not present it until garnishment proceedings against the bank prevented it from being paid, he was not precluded from foreclosing his mortgage.

3. ASSIGNMENT. *Check.*

The giving of a check does not operate as an assignment of the drawer's funds in the bank.

APPEAL from the chancery court of Prentiss county.
HON. A. J. McINTYRE, Chancellor.

Bill by Jule V. King against Thomas W. Wileman and another. From a decree for complainant, the named defendant appeals.

The facts are fully stated in the opinion of the court.

*Cunningham & Cunningham,* for appellants.

This is a case where a check was issued and the funds tied up before the check was presented, not by any fault of the holder, but because of the default of the drawer in not paying his debts and keep himself removed from the fraud which rendered him subject to attachment.

The issuance and acceptance of a check is not payment, when presented, in the absence of a special agree-

ment on the part of the holder to assume the risk of nonpayment.  21 Ruling Case Law., sec. 59; 30 Cyc., p. 1191 (b); *Waddlington* v. *Cover,* 51 Miss. 631.

The learned chancellor was evidently wrong in assuming that the issuance and acceptance of the check was an assignment of the funds in the bank *pro tanto.* Hemingway's Code, sec. 2705.

*Robins & Thomas,* for appellee.

There was an issue of fact between the appellant Wileman and appellee, King, as to whether or not the check was accepted in full payment and satisfaction and whether or not the note and deed of trust was paid or discharged.  The court finds that the deed of trust was paid off and discharged and that the check was accepted as payment.  This is a question of fact and having been determined by the court in its decree as well as in its opinion, it is like the finding of a jury and would not be disturbed if there were evidence before the court, to support it, and Mr. King's statement certainly furnishes that evidence.  In the opinion of the chancellor made a part of the record in this cause, beginning on page 49, the chancellor finds that Mr. Wileman instructed Mr. King to leave the money in the bank and to give a check for it, and that Mr. King the next morning after he got back home gave him a check for the amount he owned and that at that time the money was in the bank to King's credit, and that Mr. Wileman accepted the check in the payment of the note and deed of trust.

It cannot be claimed that Mr. King perpetrated any fraud in this, and if the check was accepted with no false statement by him, and it is not claimed that he made any, in the payment of the note and deed of trust, the note and deed of trust were satisfied and discharged, and if Wileman did not collect his check, if he had any remedy at all, his remedy was against the bank for the amount

of the check, or if the bank, failed to pay it and he had exercised reasonable dilligence trying to collect it, then he would have an action against the funds in the bank. With the findings of the Chancellor in our favor on the controverted facts of this case we cannot believe that there is any necessity for going into questions of law that Counsel undertake to raise, except simply to say this, that we do not dispute the proposition that there are occasions where the giving of the check is not satisfaction of the debt for which it is given, but this depends upon what occurs at the time of the giving of the check.

There is this further thing that the court should take into consideration, which had an influence with the chancellor, that is, Mr. Wileman received this check in payment of the note and deed of trust. He made no effort to collect it for a week or ten days afterwards, and that he was present at the justice court trial and knew that the bank had suggested that he had an interest in this and refused to file his claim for the amount of the check.

The chancellor, as expressed in his written opinion, was of the opinion that had Wileman filed his claim for this money before the justice court it should have been allowed.

At any rate he was in duty bound and owed it to Mr. King, who had put the money in the bank at his request and for his benefit and on his direction, instead of bringing his cash, to present his check with reasonable diligence and if the bank then refused to pay, to put in his claim when the bank answered the garnishment in the justice court.

It would look like there was some ulterior motive on the part of Mr. Wileman in failing to present this check in reasonable time to the bank for payment and in refusing to make his claim to the money after the garnishment.

We do not deny that in the ordinary course of business a debt is not paid where a check is given for the same, unless the check is paid, but the presumption that the original ·debt is not satisfied without negligence of the party to whom the check is given "will yield to proof of the intention of the parties of course a check may be taken as · payment by agreement and . if it was the intention of the parties to give and recieve the check as payment, the law will have due regard to its execution:'' 5 Cyc., Paragraph (B), page 528.

This is nothing but a familiar proposition ·where the parties have an understanding as in this case and the check is accepted as payment, it is payment. We respectfully submit that the case should be affirmed.

STEVENS, J., delivered the opinion of the court.

Appellee exhibited his bill of complaint against appellant, T. W. Wileman, and one Green, trustee, seeking to enjoin the foreclosure of a certain deed of trust which King executed in favor of Wileman, as beneficiary, to secure a note of seventy-five dollars. The bill for injunction was answered, and the cause set down for hearing on bill, answer, and proof, and from the decree, declining to overrule the injunction, appellant prosecutes this appeal.

In April, 1916, Wileman loaned King seventy-five dollars and took a note and deed of trust on certain crops of corn, cotton, ·and other agricultural products raised during the year 1916, and also on certain live stock. In the fall, and before the maturity of the note, King was carrying to market in the town of Bonnville a bale of cotton. On the way he met his creditor, Wileman, and stated that he was carrying the cotton to be sold and desired to pay his note ·out of the proceeds. There is some conflict in the testimony between the parties as to what was said on this occasion; King contending and testifying that Mr. Wileman told him to sell

the bale of cotton and to deposit the proceeds to his (King's) account, and that King might give him a check for the full amount of the indebtedness. King sold the cotton and deposited approximately ten dollars in the bank, and used the balance of the money in paying some other debts. King, however, already had on deposit in the Bank of Booneville seventy-nine dollars and fifty cents, which, together with the ten dollars, made an amount sufficient to pay the secured note and interest. The next day King went to Mr. Wileman to take up his note and deed of trust, and executed his check in settlement. When this transaction was had, Wileman was at home ill, and for his reason did not go to town to present the check until after the lapse of about ten days. In the meantime another creditor of King had sued out an attachment against King and garnished the bank. This attachment and garnishment was made returnable to the justice, court, and the bank, in answering, suggested that appellant had an assignment of the funds and claimed an interest therein. It does not appear, however, that appellant was summoned to appear in the justice court and propound his claim.

When King tendered his check for the indebtedness, appellant inquired if the money was in the bank and King responded that it was. There was something also said as to whether the amount of eighty-one would fully cover the note and interest, and in this conversation King remarked that, "if that was not all right, he would make it all right." Appellee contends that this statement referred alone to the amount of the check, while appellant contends that it had a broader meaning. The statement, thus far is according to King's version of the facts. On the trial of the case appellant contended, and so testified, that he directed King to sell the bale of cotton, deposit the proceeds to Wileman's account, and bring him the deposit slip; that although this had not been done he did accept King's check, but upon the

assurance that the money was in the bank, and that, if everything was not all right, King would make it all right. The chancellor ruled that the note and deed of trust had been paid and satisfied by the execution and delivery of the check. The learned chancellor incorporated in the record his written opinion, in which, among other things, he says:

"I am of the opinion that, when Mr. Wileman endorsed this check, he owed it at least to King to try and secure this money and at least file his claim with the justice court. While my opinion is not binding upon the justice court, yet I am of the opinion that his claim was good, and, that being the case, there is nothing to do, except make the injunction perpetual."

Appellee's contentions in this case are not supported by the law or the facts. There is no controversy about the fact that appellant held a valid promissory note and that this note was amply secured. The debtor upon his own initiative harvested and sold a bale of cotton and tendered his creditor a check for the amount of the secured claim. When the check was presented for payment it was dishonored, and that through no fault, fraud, or collusion of the creditor, the holder of the check. There is no proof justifying the inference that appellant suggested or inspired the prosecution of the attachment suit, or knew anything about the funds having been garnished until the check had been presented. It affirmatively appears that when the check was presented the funds of the depositor had been impounded by a valid garnishment proceeding. Thereupon appellant tendered the check back to appellee and demended a return of his note and deed of trust. Appellee declined to give up the note and trust deed, and, to employ his own language, responded: "I just told him I did not care about exchanging the note." There is no evidence of a definite and special agreement to the effect that appellant accepted the check in full payment and discharge of the

secured indebtedness. It was one of the usual trans-
actions of business, where the debtor in the usual way
executed and delivered a check upon his bank, and the
check through no fault of the holder was dishonored.
Under such circumstances the general rule is applicabe,
and the check is not payment.

In *Bank of Greenville* v. *Kretschmar*, 91 Miss. 608, 44
So. 930, our court, by MAYES, J., gave utterance to the
well-known rule of law that: "A check is not payment,
unless the check is paid, unless it is specially agreed by
the parties that the check, whether good or not, shall
have that effect. The presumption is against its being
taken as payment the party asserting it to show that the
check was to have that effect. The presumption is against
its being so received, and this presumption can only be
overcome by clear proof to the contrary."

Our court cited with approval *Wadlington* v. *Covert,*
51 Miss. 631, a case which, though it deals with the ac-
ceptance of an order in the nature of a bill of exchange,
discusses the rule of law here applicable, and especially
upon the point, hereinafter referred to, as to whether
the check constituted an assignment *pro tanto* of the
funds to the depositor's credit in the bank. Any further
reference to the substantive law that a check ordinarily
does not constitute payment is unnecessary. The general
rule is conceded.

The facts do not in our opinion show, but on the
contrary rebut, any special agreement that the check
was accepted as payment, whether it was good or bad.
The case at bar does not present an instance where the
check or negotiable instrument of a third party is assign-
ed and accepted in settlement of a prior indebtedness, and
there has been a delay prejudicial to the rights of any
of the parties to the instrument. This is a trans-
action solely between the creditor and debtor. Any de-
lay, therefore, in the presentment of the check for pay-
ment, has caused no one a loss. We assume that the

attachment was properly sued out and the funds lawfully garnished. If so, the money in the bank has been appropriated for the payment of appellee's lawful indebtedness. Appellee lost nothing. There is evidence, however, tending to show that appellant was delayed in presenting the check on account of illness.

We proceed, then, to a consideration of the thought, reflected by the chancellor's opinion, that appellant had an interest in the funds and was privileged to propound his claim thereto in the justice court. This position is untenable. Whatever may be the minority rule as reflected by certain decisions of other states, the great weight of authority is to the effect that a check does not operate as an assignment *pro tanto* of the funds on deposit to the credit of the depositor in a banking institution. Case note, 35 L. R. A. (N. S.) 1.

Our court fell in line with the great majority of the courts of the Union in the case of *Bush, Redwood & Co.* v. *Foot,* 58 Miss. 5, 38 Am. Rep. 310. It is different if the instrument is a mere order, to be paid out of a special found. *Wadlington* v. *Covert, supre.* But further discussion of the authorities on this point is unnecessary, because of the enactment by our legislature of the Uniform Negotiable Instruments Law. Chapter 244, Laws of 1916. By section 189 of this act (section 2767, Hemingway's Code) it is expressly provided:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

It follows that appellant could not have propounded successfully any claim to the funds garnished, and had no interest, legal or equitable, in the money on deposit in the Bank of Booneville to appellee's credit. Equity demands that his promissory note and deed of trust be restored to him. The secured indebtedness has not been paid. The injunction was wrongfully sued out, and

should have been dissolved. The decree of the learned chancellor will be reversed, and decree entered here dissolving the injunction and remanding the cause for the assessment of any damages which appellant has sustained by reason of the wrongful issuance of the writ.

                                    *Reversed and remanded.*