FEDERAL LAND BANK OF NEW ORLEANS, LA., *v.* COLLINS
*et al.*

(Division A.   April 7, 1930.)

[127 So. 570.   No. 28572.]

894

Wells, Jones, Wells & Lipscomb, of Jackson, for appellant.

Deavours & Hilbun, of Laurel, for appellee, Commercial Bank & Trust Co.

Shannon & Schauber, of Laurel, for appellee, First National Bank.

Collins & Collins, of Laurel, for appellee.

Argued orally by **Calvin Wells**, for appellant.

**McGowen, J.**, delivered the opinion of the court.

The Federal Land Bank filed its bill in the chancery court of Jones county against D. R. and M. J. Sanders, Jeff Collins, A. S. Jackson, the Commercial National Bank & Trust Company, and the First National Bank of Laurel, Mississippi, to which bill all of the appellees, defendants in the court below, filed demurrers, except A. S. Jackson, who filed a cross-bill against his codefendants. The codefendants appeared, answered this cross-bill, and interposed a demurrer. The demurrers of the appellees to the original bill of the Federal Land Bank were sustained, and the appellant was granted an appeal to this court to settle the principles of the cause. The demurrer to the cross-bill of Jackson was continued by the court until a determination of this appeal was had by this court.

The Federal Land Bank charged in its bill that it loaned Sanders and his wife five thousand dollars evidenced by note which was secured by a deed of trust dated September 1, 1923, on certain lands owned by the Sanders. The loan was a long-term loan with payments to be made three hundred twenty-five dollars annually, and on January 1, 1929, there remained due on said loan

four thousand six hundred seventy-six dollars and ninety-four cents.

It was further alleged that proper proceedings were had in the proper court on the application of the Mississippi Power Company to condemn a right of way across the lands belonging to Sanders and his wife for its public corporation purposes, and process was issued and served on Sanders and wife, the Federal Land Bank, and the trustee named in the deed of trust. Neither the trustee nor the Federal Land Bank entered appearance, but the Sanders entered their appearance, and the proceeding resulted in a judgment assessing damages for the land taken, which was a one-hundred foot right of way, for the sum of one thousand three hundred dollars. The judgment recited that this was for damages awarded Sanders and wife and the Federal Land Bank, which had an interest in the lands condemned by virtue of its deed of trust. Thereupon the Mississippi Power Company paid the award to A. S. Jackson, the circuit clerk of that county, by check drawn by A. S. Jackson, circuit clerk, on the First National Bank of Laurel, Mississippi, payable to D. R. Sanders, Mrs. M. J. Sanders, the Federal Land Bank of New Orleans, and Jeff Collins. Judgment was rendered October 8, 1925. The check was dated October 23, 1925. On the back of the check appeared the following indorsements: "D. R. Sanders. Mrs. M. J. Sanders. The Federal Land Bank of New Orleans, by Jeff Collins, Attorney for Defendants for D. R. Sanders; W. M. Carter Lumber Company, by Keeton." Also on the back of the check was stamped: "Commercial National Bank & Trust Company of Laurel, Laurel, Mississippi, Paid October 27, 1925, per Teller." The check was perforated with the following words and figures: "Paid 10—27—25."

The bill further alleged that said check was presented for payment to the Commercial Bank & Trust Company and was paid by said bank on October 27th with the in-

dorsements, as set forth above, thereon at the time; that Sanders and his wife indorsed the check personally, and that the indorsement, "The Federal Land Bank of New Orleans, by Jeff Collins, Attorney for Defendants, for D. R. Sanders," was written on the back of the said check by the defendant Jeff Collins, and that the said defendant, Collins, was without any authority whatsoever to indorse for the Federal Land Bank, and that he was in no way authorized to accept payment of said sum of money for said complainants, nor were any of the parties whose names were indorsed thereon authorized to collect the check for the said Federal Land Bank; that the indorsement was void and did not authorize the payment of the check by the Commercial National Bank or by the First National Bank of Laurel; that the payment thereof did not constitute a legal payment; that the Federal Land Bank was entitled to the proceeds of the check under its deed of trust, and that no part of same was ever paid to it or to its trustee; that neither it nor the trustee ever knew that the award was rendered by the eminent domain court, and that they did not know of the payment of the check by Jackson until June 30, 1928, nor did it know of the indorsement thereof until that date. It alleged that Jackson, the circuit clerk, is indebted to it in said sum with interest from the date of the check. It also alleged that the two Laurel banks and Sanders and his wife were indebted to it in the said sum with interest.

The bill further alleged that the defendant Jeff Collins, by his actions in indorsing the check in the manner set forth was indebted to it for the amount of the check with interest. They alleged as grounds of jurisdiction of the equity court that its aid was sought to prevent a multiplicity of suits and enforce the lien of complainant existing by virtue of the deed of trust upon the lands, a portion of which were condemned by the Mississippi Power Company, and consequently upon the money ad-

judicated as damages to the land in said eminent domain proceedings; and that there was no plain, adequate, and speedy remedy at law. The bill prayed for judgment against each of the defendants, or such of the defendants as the evidence shows to be liable for the said sum and interest, and prayed for general relief. The bill was filed January 8, 1929.

The First National Bank of Laurel and the Commercial National Bank & Trust Company alleged the same grounds of demurrer, which are: First, because complainant has a plain, adequate, and speedy remedy at law. Second, because said bill does not state a cause of action against different defendants. Third, because complainant is barred by the three-year statute of limitations. The demurrers of Collins and Sanders contend the same grounds, with the additional fourth ground, because complainant is guilty of such laches as to bar the right of recovery in this suit. We shall first address ourselves to the demurrer of the two Laurel banks, the First National Bank being the drawee and the Commercial National Bank & Trust Company having paid the money over the counter, stamped its name on the back, and collected said check from the drawee, they are perhaps in the same situation; and the same question is presented on this appeal as being applicable to these two banks, but as distinguished from the other appellees.

The precise contentions of appellee bank are that the Federal Land Bank of New Orleans had no right of recovery, and could not recover from either of them because the Federal Land Bank is merely the holder, or one of the holders, of the check and cannot maintain an action against the bank on which the check is drawn; the check being drawn on the First National Bank and not on the Commercial National Bank & Trust. It is conceded by counsel for appellant that the majority rule is that the holder of a check, or payee thereof, has no right of action against the drawee bank unless the

check has been certified or accepted by the drawee bank, even though the bank may have sufficient funds, at the time the check is presented for payment, belonging to the drawer out of which the check is legally payable. Counsel for appellant further concede that the majority holding is predicated upon the further rule that a check does not operate as an assignment pro tanto of the funds on deposit to the credit of a depositor in a banking institution. In our state it was decided long prior to the enactment of the Negotiable Instruments Act that a check general in its nature with no evidences of assignment on its face, and not drawn upon a particular fund, would not operate as an assignment pro tanto of that part of the funds upon which it was drawn. In the case of Bush, Redwood Co. v. Foote, 58 Miss. 5, 38 Am. Rep. 310, Judge Campbell, as the organ of the court, so held; and in the case of Wileman v. King, 120 Miss. 392, 82 So. 265, 226, 5 A. L. R. 584, King gave Wileman a check in settlement of his indebtedness. Wileman retained the check for about ten days. In the interim a creditor had served a garnishment upon the bank. In its answer to the garnishment the bank suggested that Wileman had an assignment of funds and claimed an interest therein; Wileman did not appear however. The check was presented to the bank and payment was refused. Wileman tendered the check to King and demanded his security which he had surrendered on the payment of the check. There was no agreement that the check was full payment. It was contended in the injunction suit in which it arose that the check was a payment; this contention was not allowed by the court.

On the contention that the check was an assignment pro tanto, Judge Stevens as the organ of the court said: "Whatever may be the minority rule as reflected by certain decisions of other states, the great weight of authority is to the effect that a check does not operate as an assignment pro tanto of the funds on deposit to the

credit of the depositor in a banking institution," and cited Bush, Redwood & Co. v. Foote, 58 Miss. 5, 38 Am. Rep. 310, as showing that our court was aligned with the great majority of the courts of the union. In addition, however, he said the case was disposed of by section 189 of the Negotiable Instruments Law, being section 2943 of Hemingway's 1927 Code. This section expressly provides: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." The same rule is adhered to in the case of Smythe v. Sanders, 136 Miss. 382, 101 So. 435.

It is necessary that we refer to certain sections of the Negotiable Instruments Act which was in force long before the transaction here involved occurred. We have already quoted section 2943 of Hemingway's 1927 Code. Section 2939 of Hemingway's 1927 Code reads: "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Section 2886 of Hemingway's 1927 Code shows how an acceptance may be made, and is as follows: "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

In the light of the first of these statutes, counsel for appellant is forced to stand upon the narrow ledge that the payment of the check by the two banks will constitute an acceptance. The drawee bank simply marked it "paid" and did not write anything else except the date. The bank first paying the check, the Commercial National Bank & Trust Company, simply wrote its name as indorser and passed the check on to the drawee bank;

does this constitute an acceptance? The precise question has not been presented to this court for decision. Without reference to authorities in other jurisdictions it would appear that the drawee bank had never written its name across the paper and therefore, under the strict terms of the statute, could not be bound as an acceptor; in the second place, it does not appear to us to be illogical and unsound to say that the payment of a check by the drawee, and the stamping of it "paid," is equivalent to the same thing as the acceptance of a check; however, there is a variety of opinions in the various jurisdictions on this question. Counsel correctly states that the theory upon which the numerous courts hold that the payment of a check creates privity between the holder of the check and the drawee bank is tantamount to a pro tanto assignment of that part of the funds. It is most easily understood how the payment of the check, when not authorized to be done by the drawee bank, might under such circumstances create liability on the part of the drawee to the drawer. Counsel cites the case of Pickle v. Muse, 88 Tenn. 380, 12 S. W. 919, 7 L. R. A. 93, 17 Am. St. Rep. 900, wherein Judge LURTON held that the acceptance of a check was necessary in order to give the holder thereof a right of action thereon against the bank, and further held in a case similar to this, so far as this question is concerned, that the acceptance of a check so as to give a right of action to the payee is inferred from the retention of the check by the bank and its subsequent charge of the amount to the drawer, although it was presented by, and payment made to, an unauthorized person. Judge LURTON cited the case of National Bank of the Republic v. Millard, 10 Wall. 152, 19 L. Ed. 897, wherein the supreme court of the United States, not having such a case before it, threw out the suggestion that, if it was shown that a bank had charged the check on its books against the drawer and made settlement with the drawee that the holder could recover on account of

money had and received, invoking the rule of justice and fairness, it might be said there was an implied promise to the holder to pay it on demand. See National Bank of the Republic v. Millard, 10 Wall. (77 U. S.) 152, 19 L. Ed. 899. The Tennessee court then argued that it would be inequitable and unconscionable for the owner and payee of the check to be limited to an action against an insolvent drawer and might thereby lose the debt. They recognized the legal principle that there is no privity between the drawer bank and the holder, or payee, of the check, and proceeded to hold that no particular kind of writing was necessary to constitute an acceptance and that it became a question of fact; and the bank became liable when it stamped it "paid" and charged it to the account of the drawer, and cites, in support of its opinion, Seventh National Bank v. Cook, 73 Pa. 483, 13 Am. Rep. 751; Saylor v. Bushong, 100 Pa. 23, 45 Am. Rep. 353; and Dodge v. Bank, 20 Ohio St. 234, 5 Am. Rep. 648.

This decision was in 1890, prior to the enactment of the Negotiable Instruments Law by the state of Tennessee. However, in this case Judge SNODGRASS points out that the Millard case, supra, was dicta. The Dodge case, from the Ohio court, held exactly as the Tennessee court, but subsequently in the case of Elyria Bank v. Walker Bin Co., 92 Ohio St. 406, 111 N. E. 147, L. R. A. 1916D, 433, Ann. Cas. 1917D, 1055, the court held to the contrary, called attention to the fact that the Dodge case was no longer the law, and proceeded to announce that, whatever might have been the law before the passage of the Negotiable Instruments Act in that state, it was no longer the law; that the rule announced in the Dodge case had been "discarded." The court, in the latter case, expressed its doubts that the courts of Tennessee and Pennsylvania would adhere to the rule announced in the Pickle case, quoted supra, in the face of the Negotiable Instruments Law. Subsequent to the

Millard case, the supreme court of the United States, in the case of First National Bank of Washington v. Whitman, 94 U. S. 343, 347, 24 L. Ed. 229, where the bank, without any knowledge that the indorsement of the payee was unauthorized, paid the check, and it was contended that by the payment the privity of contract existing between the drawer and drawee was imparted to the payee, said:

"It is further contended that such an acceptance of the check as creates a privity between the payee and the bank is established by the payment of the amount of this check in the manner described. This argument is based upon the erroneous assumption that the bank has paid this check. If this were true, it would have discharged all of its duty, and there would be an end of the claim against it. The bank supposed that it had paid the check; but this was an error. The money it paid was upon a pretended and not a real indorsement of the name of the payee. The real indorsement of the payee was as necessary to a valid payment as the real signature of the drawer; and in law the check remains unpaid. Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before.

"We cannot recognize the argument that a payment of the amount of a check or sight draft under such circumstances amounts to an acceptance, creating a privity of contract with the real owner. It is difficult to construe a payment as an acceptance under any circumstances. The two things are essentially different. One is a promise to perform an act, the other an actual performance. A banker or an individual may be ready to make actual payment of a check or draft when presented, while unwilling to make a promise to pay at a future time. Many, on the other hand, are more ready to promise to pay than to meet the promise when required. The

difference between the transactions is essential and inherent.''

Counsel for appellant cite other cases holding that the stamping of the check ''paid'' and the charging of the amount thereof to the drawer constituted an acceptance, but we are of opinion that none of these cases cited hold that it is in compliance with the Negotiable Instruments Act; paying the check and stamping same is not the equivalent of accepting the check in writing signed by the drawee. The cases holding that payment as indicated above constituted acceptance were rendered prior to the adoption of the Negotiable Instruments Act in the particular state, and these decisions are divided into two classes; the one holding that the check delivered by the drawer to the holder and presented to the bank or drawee constitutes an assignment pro tanto; the other holding that the payment of the check and the charging of same to the drawee although paid to an unauthorized person creates privity of contract between the holder and the drawee bank.

We have already seen that our own court has repudiated the assignment pro tanto theory, and since the adoption of the Negotiable Instruments Act by this state we are compelled to say that payment of a check is not equivalent to accepting a check in writing and signing the name of the acceptor thereon. Payment of the check and the charging of same to the drawer does not constitute an acceptance. Payment of the check is the end of the voyage; acceptance of the check is to fuel the vessel and strenghthen it for continued operation on the commercial sea. What we have said applies to the holder and not to the drawer of the check. On this question we conclude that the general rule is that an action cannot be maintained by a payee of the check against the bank on which it is drawn, unless the check has been certified or accepted by the bank in compliance with the statute, even though at the time the check is presented the drawee

bank has funds belonging to the drawer of the check out of which the check is legally payable; and that the payment of the check by the bank on which it is drawn, even though paid on the unauthorized indorsement of the name of the holder (without notice of the defect by the bank), does not constitute a certification thereof, neither is it an acceptance thereof; and without acceptance or certification, as provided by statute, there is no privity of contract between the drawee bank and the payee, or holder of the check. Neither is there an assignment pro tanto of the funds where the check is not drawn on a particular fund, or does not show on its face that it is an assignment of a particular fund. The above rule as stated seems to have been the rule in the majority of the states even before the passage of the uniform Negotiable Instruments Act in the several states. The opposite view is to be found in the following cases: Vanbibber v. Bank of Louisiana, 14 La. Ann. 481, 74 Am. Dec. 442; McFadden v. Follrath, 114 Minn. 85, 130 N. W. 542, 37 L. R. A. (N. S.) 201; Pickle v. Muse, 88 Tenn. 380, 12 S. W. 919, 7 L. R. A. 93, 17 Am. St. Rep. 900; and Seventh National Bank v. Cook, 73 Pa. 483, 13 Am. Rep. 751; Dodge v. National Exchange Bank, 20 Ohio St. 234, 5 Am. Rep. 648. However the Pennsylvania and Ohio courts have not adhered to the rule announced in those cases. We cite the following cases in addition to those already cited as holding that the payment to an unauthorized person by the bank does not constitute an acceptance: Sims v. American National Bank, 98 Ark. 1, 135 S. W. 356; Tibby Bros. Glass Co. v. Farmers' & Mechanics' Bank, 220 Pa. 1, 69 A. 280, 15 L. R. A. (N. S.) 519; Clark v. Warren Savings Bank, 31 Pa. Super. Ct. 647; Baltimore & O. Ry. Co. v. First National Bank, 102 Va. 753, 47 S. E. 837; Hunt v. Security State Bank, 91 Or. 362, 179 P. 248; Southern Trust, etc., v. American Bank, etc., 148 Ark. 283, 229 S. W. 1026, 14 A. L. R. 761; Rauch v. Bankers' Nat. Bank, 143 Ill. App. 625.

We are of the opinion that the court correctly sustained the demurrer on the facts above expressed.

As to the Collins-Sanders demurrer we are of the opinion that the three-year statute of limitations applies in this case. Section 2637, Hemingway's 1927 Code, section 3099, Code of 1906. The bill alleged that the Federal Land Bank was served with process in the eminent domain proceeding, and for reasons not divulged did not enter its appearance or follow up the lawsuit. The charge of concealment is based on the statement that the bank did not know until June 30, 1928, that the award of one thousand three hundred dollars had been made by the court in its judgment, nor did it know that the money had been paid thereon as set forth in the bill.

Counsel argues that this constitutes a concealment of the facts within the purview of section 2647, Hemingway's 1927 Code, section 3109, Code of 1906, which provides that, "if a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." We are of the opinion that the bill does not charge any such facts as show fraudulent concealment of the Federal Land Bank's cause of action. The fact is, the Federal Land Bank was summoned to court and knew, or was presumed to know, that the result of eminent domain proceedings would be a judgment for the payment of money, and the statute requires that an award shall be paid to the circuit clerk; so that, we think, when it was summoned to court it knew, or is charged with notice, of the fact that a judgment in its favor had been rendered. Some of the parties must have acted in some way that prevented the bank from knowing the true situation; there must have been some positive act of concealment. See Buckner v. Calcote, 28 Miss. 432;

State v. Furlong, 60 Miss. 839; Hudson v. Kimbrough, 74 Miss. 341, 20 So. 885; Thornton v. Natchez, 88 Miss. 1, 41 So. 498; Masonic Benefit Ass'n v. First State Bank, 99 Miss. 610, 55 So. 408.

Counsel for appellant next insist that section 2637, Hemingway's 1927 Code, section 3099, Code of 1906, does not apply because the check is in writing, that this suit is based thereon, and therefore this section, the three-year statute of limitations, does not apply. This statute is in these words: "Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued and not after." And cites Cock v. Abernathy, 77 Miss. 872, 28 So. 18; Washington v. Soria, 73 Miss. 665, 19 So. 485, 55 Am. St. Rep. 555; and Masonic Benefit Ass'n v. First State Bank, supra.

We are deciding the case as presented to us by the appellant. Its contention is, to use its language: "We submit that the cause of action is evidenced by the check itself, a written instrument, and that such cause of action is not barred by the three-year statute of limitation." Counsel rely upon Masonic Benefit Association v. First State Bank, supra, in which case a depositor was suing a bank and depended upon his passbook, a canceled check and certificate of deposit as the basis of his suit, and the written evidence of the implied contract on the part of the bank to pay to the drawer in person, or to his order, the money there deposited. All that counsel presents here is the canceled check with the indorsements of these parties on the back thereof. There is no implied promise to pay deducible from this instrument, and the cases cited have not so held.

The test is tersely stated by Judge Campbell in Foote v. Farmer, 71 Miss. 148, 14 So. 445, 446: "The statute mentioned bars action on any unwritten contract in three

years. To take a case out of this statute there must be a writing evidencing an acknowledgement of indebtedness, or promising to pay, in such terms as to render any supplementary evidence unnecessary.'' The bill in this case does not allege in terms who received this money from the bank. The very allegations of the bill show that other evidence, in order to establish any promise to pay on the part of Collins and the Sanders, would have to be offered; the canceled check with the indorsements thereon is not sufficient. In other words, the contract alleged must be provable by writing. The promise may be implied as a matter of law, but that promise must be to perform a written contract.

The Masonic Benefit Association case is not in line, because there is a perfect contract shown by the written bank book, check, and certificate of deposit in that case, and the court held that the promise to pay on the part of the bank was to be implied from these written documents.

In the case of Wally v. Dantzler Lumber Co., 119 Miss. 700, 81 So. 489, the court held that an action cannot be brought upon a paid or canceled draft in a way to characterize the suit as upon a written instrument and thus make the six years' limitation provided for in Code 1906, section 3097, apply. Also see Lehman v. Powe, 95 Miss. 446, 49 So. 622, 625, wherein a creditor undertook to probate two canceled checks, and this court said that the ''canceled checks disclose no liability;'' they were competent as evidence in a suit for money loaned as they related to such a loan; their mere introduction in such a suit unaided by other evidence would not have proven anything.

We think the three-year statute of limitation bars this action presented by the bill in this case. It is unnecessary for us to refer to the other grounds of the demurrer.

The court below properly sustained the demurrer of the several defendants interposed in this case.

Affirmed and remanded.